UNITED STATES of America, Plaintiff,

v.

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WARE-HOUSEMEN AND HELPERS OF AMERICA, AFL–CIO, et al., Defendants.

JOINT COUNCIL NO. 73 et al., Plaintiffs,

v.

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WARE-HOUSEMEN AND HELPERS OF AMERICA, AFL–CIO and Charles M. Carberry, Investigations Officer, Defendants.

Nos. 88 CIV. 4486(DNE), 90 CIV. 1475(DNE) and 90 CIV. 5557(DNE).

United States District Court, S.D. New York.

Jan. 29, 1991.

See also 754 F.Supp. 333.

Otto G. Obermaier, U.S. Atty., S.D.N.Y. (Edward T. Ferguson, III, Peter Sprung, Asst. U.S. Atty., of counsel, New York City), for the U.S.

Charles M. Carberry, Investigations Officer of the Intern. Broth. of Teamsters, New York City (Robert W. Gaffey, of counsel), for International Brotherhood of Teamsters.

Guazzo, Perelson, Rushfield & Guazzo, New York City (Caesar C. Guazzo, Delia M. Guazzo, Mark C. Rushfield, of counsel), for Joint Council 73, Frank Carracino, Guazzo, Perelson, Rushfield & Guazzo, Caesar C. Guazzo, Mark C. Rushfield and Delia M. Guazzo.

EDELSTEIN, District Judge:

The instant motions for sanctions arise out of the voluntary settlement in the action commenced by the plaintiffs United States of America (the "Government") against the defendants International Brotherhood of Teamsters (the "IBT") and the IBT's General Executive Board (the "GEB") embodied in the voluntary consent order entered March 14, 1989 (the "Consent Decree"). The remedial provisions in the Consent Decree provided for three Court-appointed officials, the Independent Administrator to oversee the remedial provisions, the Investigations Officer to bring charges against corrupt IBT members, and the Election Officer to oversee the electoral process leading up to and including the 1991 election for International Officers (collectively, the "Court Officers"). The goal of the Consent Decree is to rid the IBT of the hideous influence of organized crime through the election and prosecution provisions.

In these motions, the Government and the Investigations Officer have separately moved for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, and the court's inherent power, against Joint Council 73, a subordinate entity of the IBT, and their counsel, Caesar C. Guazzo, Mark C. Rushfield, and Delia M. Guazzo, members of the firm of Guazzo, Perelson, Rushfield & Guazzo (the "Guazzo firm"). These motions for contempt stem from over one year of litigation between Joint Council 73 represented by the Guazzo firm, and the Government and the Investigations Officer. For reasons to be discussed, these motions are granted.

## I. Findings of Fact

The Government and the IBT entered into the voluntary Consent Decree on March 14, 1989. Movant Charles Carberry is the Investigations Officer of the IBT, sworn in on June 2, 1989 pursuant to ¶ B.3 of the Consent Decree.

Paragraph A.1 of the Consent Decree vests this Court with exclusive jurisdiction

"over the subject matter of the action" and states that this Court "shall retain jurisdiction over this case ..." Paragraph K.16 states that "[t]his Court shall have exclusive jurisdiction to decide any and all issues" relating to the Consent Decree or the Court Officers.

Joint Council 73 is a subordinate entity of the IBT. By Joint Council 73's own by-laws, the IBT constitution is the "the supreme law of this Joint Council." (Constitution, Joint Council 73 at Article XXVII). Joint Council 73 is an umbrella organization from Northern New Jersey consisting of IBT locals. (Constitution, Joint Council 73 at Article IV, § 1). Frank Carracino is the president of Joint Council 73. (Complaint, 90 Civ. 5557 at 2).

Joint Council 73 has been represented throughout these proceedings by Caesar Guazzo, Esq., Delia Guazzo, Esq., and Mark Rushfield, Esq., members of the Guazzo firm. The Guazzo firm has an office in the Southern District of New York located at 207 E. 31st Street, New York, New York.

On December 4, 1989, the Investigations Officer notified Joint Council 73 of his intention to examine its books and records on December 11, 1989 pursuant to his authority at ¶ F.12.(C)(a) of the Consent Decree "to examine the books and records of the IBT and its affiliates ..." (Sprung Declaration, August 17, 1990, Ex. B). Joint Council 73 and IBT Local 641 then commenced what became action 90–1475 (DNE) against the International Brotherhood of Teamsters and the Investigations Officer on December 8, 1989 in the United States District Court for the District of New Jersey (the "New Jersey action").[1] The December 4, 1989 discovery request was stayed by agreement of the parties pending a determination on the motion for a preliminary injunction in the New Jersey. (Transcript, March 8, 1990 hearing, at 6).

The New Jersey action was brought as a order to show cause seeking a temporary restraining order and preliminary injunction prohibiting the Investigations Officer from examining its books and records. In their complaint, the plaintiffs in the New Jersey action sought a declaration that the Investigations Officer did not have the authority to examine its books and records because (i) Joint Council 73 and Local 641 were not parties to the underlying litigation nor signatories to the Consent Decree, and therefore not bound by it; and (ii) the delegation of disciplinary authority and electoral supervision by the General President and GEB to the Court Officers was improper. (Sprung Dec., Ex. C; Complaint, 90 Civ. 1475 (DNE)).

On November 2, 1989, this Court issued a Memorandum and Order denying a preliminary injunction sought by two IBT members, Harold Friedman and Anthony Hughes, to prevent the Independent Administrator from hearing disciplinary charges against them. November 2, 1989 Memorandum and Order, 725 F.Supp. 162 (S.D.N.Y.1989), *stay denied*, 728 F.Supp. 924 (S.D.N.Y.1989), *motions to dismiss and stay motions denied*, Nos. 89–6248, 89–6250 (Unpublished order, 2d Cir., Dec. 12, 1989), *aff'd* 905 F.2d 610 (2d Cir.1990). Among the issues considered in the November 2, 1989 Memorandum was an argument by Hughes that as a non-party to the underlying litigation and non-signatory to the Consent Decree, he was not bound by it. This Court specifically rejected that argument. November 2, 1989 Memorandum, *supra*, 725 F.Supp. at 168–69. In their complaint, the plaintiffs in the New Jersey action made no reference to the November 2, 1989 Memorandum.

In addition to the New Jersey action, two prior collateral lawsuits challenging the authority of the Court Officers had been filed in Chicago, Illinois, and Cleveland, Ohio. In response to the Chicago, Cleveland, and New Jersey collateral actions, on December 15, 1989, the Government moved for, and this Court granted, a temporary restraining

---

1. Local 641 was also a plaintiff in the New Jersey action. They were represented by Chasan, Leyner, Tarrant, Loftis & Lamparello. Local 641 is not a party to these sanction motions.

Further, although the IBT was a defendant in this action, the IBT viewed itself as a spectator and not directly involved in the suit.

order entered pursuant to Fed.R.Civ.Pro. 56 and a preliminary injunction pursuant to the All Writs Act, 28 U.S.C. § 1651, barring the prosecution of any litigation relating to the Consent Decree in any forum other than this Court. (December 15, 1989 Order).

On December 20, 1989, the Investigations Officer filed a notice of motion pursuant to 28 U.S.C. § 1404(a) to transfer the New Jersey action to the Southern District of New York.

On January 17, 1990, this Court entered a permanent injunction under the All Writs Act barring the prosecution of any suit involving the Consent Decree in any forum other than this Court. January 17, 1990 Opinion & Order, 728 F.Supp. 1032 (S.D. N.Y.) *aff'd* 907 F.2d 277 (2d Cir.1990). In reaching its decision in the January 17, 1990 Opinion, this Court determined that the IBT had the power under its constitution to enter into the Consent Decree, and that the locals were bound by the Consent Decree. January 17, 1990 Opinion, *supra*, 728 F.Supp. at 1048–58. Additionally, this Court specifically ordered that the New Jersey plaintiffs either dismiss the New Jersey action or transfer it to this Court. *Id.* at 1058.

On January 30, 1990, the Government presented and this Court signed an order directing the IBT to show cause why the right of the Investigations Officer to examine the books and records of the IBT and its affiliates located at ¶ F.12.(C)(i)(a) of the Consent Decree did not include the authority to make photocopies of those documents. (January 30, 1990 Order.) Then, the IBT did not further contest that the Investigations Officer could photocopy documents.

On February 15, 1990, Judge Ackerman of the United States District Court for the District of New Jersey granted the Investigations Officer's motion to transfer the New Jersey action to this Court. On March 8, 1990, this Court held a status conference on the transferred action [given the docket number 90–1475 (DNE), the

New Jersey action is hereinafter referred to as "90 Civ. 1475"]. At that conference, this Court granted the Investigations Officer leave to file a motion to dismiss the complaint of 90 Civ. 1475. This Court further stayed the Investigations Officer's December 4, 1989 discovery request pending the decision on the motion to dismiss. Additionally, the Government was granted leave to intervene in 90 Civ. 1475.

On March 16, 1990, the Investigations Officer filed the notice of motion to dismiss the complaint in 90 Civ. 1475 pursuant to Fed.R.Civ.Pro. 12(b)(6) with the Court, returnable on April 2, 1990. On March 23, 1990, plaintiffs in 90 Civ. 1475 filed their memorandum in opposition to the motion to dismiss, together with notice of a "cross-motion" seeking recusal pursuant to 28 U.S.C. § 455. In opposition to the Investigation Officer's motion to dismiss 90 Civ. 1475, plaintiffs in 90 Civ. 1475 argued that they were not bound by the disciplinary provisions of the Consent Decree, despite the rulings in the November 2, 1989 Memorandum, January 17, 1990 Opinion, and March 13, 1990 Opinion. *See* Joint Council 73, memorandum in opposition to motion to dismiss at 23–46 (March 23, 1990).

The basis of this recusal motion was the assertion that this Court demonstrated that it was unwilling to entertain the arguments of plaintiffs in 90 Civ. 1475 because of its earlier rulings—specifically the November 2, 1989 Memorandum and January 17, 1990 Opinion. On April 6, 1990, this Court denied the recusal motion because it was "based on what they [plaintiffs] perceive to be the adverse nature of the November 2, 1989 and January 17, 1990 rulings." [2] *Joint Council 73, et al., v. International Brotherhood of Teamsters, et al.,* 734 F.Supp. 626, 628 (S.D.N.Y.1990). This Court also noted that the recusal motion was untimely. *Id.* No appeal was taken by plaintiffs.

In a relevant ruling, on March 13, 1990, this Court affirmed the January 11, 1990 opinion of the Independent Administrator,

---

**2.** Subsequent to the recusal motion, both the November 2, 1989 Memorandum and the January 17, 1990 Opinion were affirmed on appeal.

*See* 905 F.2d 610, 616 (2d Cir.1990) (November 2, 1989 Memorandum); 907 F.2d 277 (2d Cir. 1990) (January 17, 1990 Opinion).

who had found that disciplinary charges filed against Friedman and Hughes had been proved. March 13, 1990 Opinion, 743 F.Supp. 155 (S.D.N.Y.), *aff'd* 905 F.2d 610 (2d Cir.1990). In the March 13, 1990 Opinion, this Court again ruled that the disciplinary authority of the Court Officers was rooted in the IBT Constitution itself, as amended by the Consent Decree. *Id.* at 160–65.

On April 13, 1990, this Court entered a decision that directly upheld the authority of the Investigations Officer to obtain sworn statements from non-signatory members of the IBT in its ruling deciding Application IX by the Independent Administrator. April 13, 1990 Memorandum & Order, 735 F.Supp. 519 (S.D.N.Y.1990), *stay denied and app. dismissed* No 90–8036, unpublished order, (2d Cir. April 17, 1990). This Court specifically held that non-signatory members of the IBT were bound by the disciplinary provisions of the Consent Decree. *Id.* at 520.

On May 4, 1990, this Court signed an order directing Anthony Calagna, a member of the IBT, to show cause on May 7, 1990 why the Court should not enter an order directing him to "submit to a sworn in-person examination by the Investigations Officer." That order further directed Calagna to appear for his sworn in-person examination on May 8, 1990, in Courtroom 1105 of this Court.

On June 1, 1990, the United States Court of Appeals for the Second Circuit affirmed this Court's November 2, 1989 Memorandum, and March 13, 1990 Opinion, thereby deciding the appeals by Friedman and Hughes. In that decision, the Court of Appeals dismissed Hughes' argument that as a non-signatory to the Consent Decree, he was not bound by its terms.

"... Hughes as a non-party ... clearly could be bound by the terms of the disciplinary mechanism set into place by the Consent Decree. This is so because the investigatory and disciplinary powers of the Court-appointed officers are proper delegations of the powers of the IBT General President and GEB within the scope of the IBT constitution that binds all members of the IBT, and because the IBT Constitution, in Article XXVI, section 2, contemplates amendment by the GEB, under the circumstances of this case, as a result of judicial direction." 905 F.2d at 622.

In rejecting Hughes' argument that he was not bound by the Consent Decree, the Second Circuit also dismissed his contention that by the recent Supreme Court opinion in *Martin v. Wilks*, 490 U.S. 755, 109 S.Ct. 2180, 2184, 104 L.Ed.2d 835 (1989), IBT members who were not parties to the underlying suit could not be bound by the Consent Decree.

"Hughes' reliance on the [Supreme] Court's decision in *Martin* is inapposite, since the Consent Decree does not curtail any independent right of a member beyond what the IBT already had the power to control, that is, a member's discipline under the IBT Constitution." *Id.* at 622–23.

On June 27, 1990, the United States Court of Appeals for the Second Circuit upheld the injunction entered by this Court on January 17, 1990. 907 F.2d 277 (2d Cir.1990). In that opinion, the Court of Appeals held that under the All Writs Act, this Court properly enjoined the subordinate entities of the IBT, non-parties to the underlying suit, from bringing Consent Decree-related litigation in any forum other than this Court. *Id.* at 281.

On July 20, 1990, this Court dismissed another collateral action filed by another subordinate entity of the IBT. *Local 27 v. International Brotherhood of Teamsters, et. al.,* July 20, 1990 (S.D.N.Y.1990). That suit had been filed by IBT Local 27 after it had been served by the Investigations Officer with a notice to inspect its books and records. The basis of this Court's dismissal of Local 27's complaint was its rejection of Local 27's argument that it was an autonomous entity from the IBT, and therefore not bound by the Consent Decree. *Id.* at 3–4.

On July 23, 1990, this Court granted the Investigations Officer's motion to dismiss the complaint in 90 Civ. 1475. *Joint Council 73 et al. v. Carberry et al.,* 741 F.Supp.

491 (S.D.N.Y.1990). In dismissing 90 Civ. 1475, this Court noted the numerous decisions of this Court and the Court of Appeals upholding the authority of the Court Officers to implement the disciplinary scheme set out in the Consent Decree. This Court concluded "[t]he legitimacy of the Consent Decree's disciplinary provisions is beyond doubt." *Id.* at 493. As a result, this Court determined that Joint Council 73's complaint did not and could not state a claim upon which relief could be granted, and the Investigations Officer's motion to dismiss the complaint with prejudice was granted. *Id.* at 494. Further, the stay of discovery imposed at the March 8, 1990 conference was dissolved. *Id.*

On August 1, 1990, Joint Council 73 filed a notice of appeal of the July 23, 1990 decision. Joint Council 73 further filed a notice of motion for a stay pending appeal of the July 23, 1990 decision of this Court and a reinstitution of the dissolved stay on the December 4, 1989 discovery request, returnable on August 14, 1990. In moving for this relief, Joint Council 73 indicated that despite the several decisions to the contrary, it was likely to succeed on the merits of its appeal. To that end, Joint Council 73 asserted that the June 27, 1990 opinion of the Second Circuit left open the issue of the binding effect of the Consent Decree on non-parties to the underlying suit. (Joint Council 73, memorandum in support of stay, August 1, 1990 at 4).

Further, Joint Council 73 argued that it stood to suffer irreparable harm by "being compelled to produce these records [demanded by the Investigations Officer]. This, in and of itself, establishes irreparable injury ..." (*id.* at 5). In making this argument, Joint Council 73 neglected to refer to, or to distinguish the numerous times this Court had held that IBT members facing pending disciplinary matters under the Consent Decree do not face irreparable harm. *See* November 2, 1989 Memorandum, *supra,* 725 F.Supp. at 169–70; November 29, 1989 Order; March 16, 1990

Order; *Cozza v. Lacey,* 740 F.Supp. 285, 286–87 (S.D.N.Y. July 10, 1990).

On August 2, 1990, the Investigations Officer sent Joint Council 73 a second notice pursuant to ¶ F.12.(C) of the Consent Decree to examine its books and records beginning on August 16, 1990. (Sprung Declaration, August 17, 1990, Ex. E). On August 8, 1990, Delia Guazzo, Esq., wrote the Investigations Officer and informed him that Joint Council 73 "declines to comply with your request for examination of books and records as set forth in yours of August 2, 1990" because of the pending stay application. (Gaffey Declaration, October 1, 1990 ex. A). On August 9, 1990, the Investigations Officer responded by letter to Delia Guazzo, Esq., that no stay was currently in place, and absent the issuance of a stay, the August 16, 1990 examination of books and records would go forward as scheduled. (Gaffey Dec., Ex. B).

On August 16, 1990, Richard Murray and Robert Fischer, agents on the staff of the Investigations Officer, appeared as scheduled at the offices of Joint Council 73 to examine its books and records. The agents were met by the secretary at Joint Council 73, Roberta Czachor.[3] The agents were permitted only to inspect certain documents, limited to the constitution and by-laws, Labor Department Forms LM–2, and minutes of executive board meetings. The agents were not permitted to photocopy any documents. Later that morning, Ms. Czachor claimed she had come down with a sudden illness. The agents were then directed by Ms. Czachor to leave Joint Council 73's office at 12:30 p.m. (Sprung Dec., ¶¶ 11–13; Czachor Sworn Statement, at 10).

In the afternoon of August 16, 1990, the Government advised Joint Council 73 and the Guazzo firm that unless the agents were permitted, beginning on August 17, 1990 at 9:00 a.m., to fully examine and copy their books and records, the Government would initiate contempt proceedings against Joint Council 73 and its counsel, the Guazzo firm. (Sprung Dec., Ex. F.)

---

**3.** The Investigations Officer took the sworn statement of Ms. Czachor on August 29, 1990

(Gaffey Dec., Ex. C).

On August 17, 1990, the agents returned to the offices to continue their examination. The agents were permitted to conduct only a partial examination until 4:00 p.m., the normal closing time of Joint Council 73's offices. The agents informed Ms. Czachor that they would return at 9:00 a.m. on Monday, August 20, 1990. (Transcript, August 21, 1990 hearing, at 12).

In response to the difficulty encountered by the agents of the Investigations Officer, on August 17, 1990, the Government sought and this Court signed (by Hon. Kenneth Conboy, U.S.D.J., sitting in Part I) an order directing Joint Council 73 and Caesar Guazzo to show cause on August 21, 1990 why an order should not be entered holding each in contempt of the Consent Decree for their interference with the Investigations Officer's examination of Joint Council 73's books and records. That order further directed Joint Council 73 to provide unimpeded access to their books and records, including those requested by the Investigations Officer. (August 17, 1990 Order.)

On August 20, 1990, the same agents of the Investigations Officer returned to Joint Council 73's office to continue inspection and copying of Joint Council 73's books and records. When the agents arrived at 9:00 a.m., they found the lights out and the offices locked. In her later statement, Ms. Czachor stated that she arrived at the Joint Council 73 offices at 8:30 a.m. and departed at 9:00 a.m. Ms. Czachor stated that she had spoken to Caesar Guazzo, Esq. that morning, and he told her to go home. (Transcript, Czachor statement, at 3–25.)

On August 21, 1990, this Court heard argument from the Government, the Investigations Officer, and Joint Council 73 by Caesar Guazzo at 9:30 a.m. in East Quogue, New York on the Government's sanction application. After hearing argument, the Court ordered Joint Council 73, on pain of contempt, to ‘provide the Investigations Officer with "unobstructed and unimpeded access" to its books and records. This Court further ordered that Joint Council 73

produce the books and records requested by the Investigations Officer beginning on August 23, 1990, at 9:30 a.m., in Courtroom 1105 of this Court, together with counsel, and the members of the general executive board of Joint Council 73 (August 21, 1990 discovery Order). This Court then set down a hearing date for the Government's sanction motion. Further, the Court denied Joint Council 73's application for a stay pending appeal of the July 23, 1990 Order. (August 21, 1990 stay Order).

On August 22, 1990, Joint Council 73 filed a notice of appeal from the Court's August 21, 1990 discovery order directing production of the requested books and records, and moved the Court of Appeals for a stay pending appeal of that same order. On August 22, 1990, the applications judge of the Second Circuit (Pierce, C.J.) issued a temporary stay on the August 21, 1990 discovery Order until the motion could be heard by a panel of that court during the motion calendar scheduled for August 28, 1990. On August 28, 1990, a panel of the Second Circuit (Feinberg, Cardamone, C.JJ., and Cabranes, D.J.) heard argument and denied Joint Council 73's stay motion from the bench.

After the denial of the stay, on August 28, 1990, this Court entered an order (by Hon. Robert Patterson, D.J., in part I) requiring that Joint Council 73 produce the books and records on August 29, 1990 in Courtroom 1105 of this Court. Joint Council 73 complied with that request. On September 12, 1990, Joint Council 73 dismissed its appeal of the July 23, 1990 Order by stipulation.

On August 16, 1990, the Investigations Officer sent letters by overnight mail pursuant to paragraph F.12.(C) of the Consent Decree notice of intention to take the sworn testimony of Frank Carracino, Girolemo Musso, Joseph Pecora, Jr., Frank Lucidi, Donald DiLeo, and Anthony Castenaro, all members of the executive board of Joint Council 73, and Ms. Czachor, a secretary at Joint Council 73 (and a member of IBT local 560).[4] These sworn statement

---

4. By typographical error, the notices of sworn statements are dated August 28, 1990, not August 16, 1990.

were scheduled to begin on August 28, 1990. (Complaint, 90 Civ. 5557, Ex. D.).

On August 27, 1990, the eve of the commencement of these sworn statements, Joint Council 73 and its president Frank Carracino (the "plaintiffs") instituted a second action in this Court, 90 Civ. 5557 (DNE), challenging the Investigations Officer's authority under the Consent Decree to take the sworn statements. Plaintiffs in 90 Civ. 5557 by their counsel, Ms. Delia Guazzo, Esq., proceeded to Part I by order to show cause seeking a temporary restraining order to enjoin the sworn statements scheduled for the next morning. Counsel for Joint Council 73 left a message at lunch hour for Mr. Gaffey, special counsel for the Investigations Officer, about the impending application for temporary injunctive relief. Mr. Gaffey returned the call around 1:00 p.m., but was told that no lawyer in the Guazzo firm was available to speak to him. (Gaffey Dec., ¶¶ 5–6).

On August 27, 1990, this Court signed (by Hon. Robert Patterson, D.J., in Part I), the order to show cause requiring the Investigations Officer, and the IBT to show cause why the preliminary injunction should not be entered, returnable at 6:30 p.m., in East Quogue, New York. The TRO was stricken from the order.

The verified complaint to 90 Civ. 5557 was signed by Delia Guazzo, Esq., and Frank Carracino. The complaint sought a declaratory judgment that the Investigations Officer's authority to take sworn statements under the Consent Decree was "beyond any authority under, and ... violative of, the [IBT] International Constitution." (Complaint, 90 Civ. 5557, at 8). The complaint further alleged that "the exclusive means by which the International Constitution may be amended is pursuant to Article II, Section 2 or Article IX, Section 7." The affidavit by Frank Carracino filed in support of 90 Civ. 5557 stated that the Investigations Officer did not have the authority to take the noticed sworn statements.

The memorandum of law in support of injunctive relief repeated the previously dismissed argument that "[t]he Consent Order cannot be applied to non-parties." (Plaintiff's Memorandum in Support of 90 Civ. 5557, August 12, 1990, at 12–13). "The government ... does not and cannot dispute this fundamental principle." *Id.* That memorandum again challenged the well-settled principle that *Martin v. Wilks, supra,* was inapposite to the claim of not being bound by the Consent Decree. The memorandum stated that such a ruling, made squarely by both the Court of Appeals and this Court, "betrays a monumental ignorance of federal labor law ..." *Id.* Joint Council 73, however, did not even cite the Second Circuit's June 1, 1990 Opinion, which specifically rejected the argument that *Martin v. Wilks, supra,* stood for the principle that non-signatories to the Consent Decree could not be bound by its provisions, nor any of this Court's rulings on that argument.

Despite having proceeded by order to show cause that same afternoon, at the hearing held at 6:30 p.m., on August 27, 1990, in Quogue, New York, counsel for movants Delia Guazzo objected to the manner and timing of the hearing on that motion for expedited relief. (August 27 transcript at 2–4). In making her argument in support of injunctive relief, Ms. Guazzo was unable to distinguish the numerous decisions of this Court that had denied injunctive relief to IBT members seeking to enjoin identical discovery requests made by the Investigations Officer. Indeed, Ms. Guazzo was unable to factually liken the instant situation to the cases cited in her brief and distinguish the instant situation from earlier decisions of this Court. (August 28, 1990 transcript, at 11–14). At a later hearing, this Court ordered counsel to prepare a memorandum discussing the factual basis of the cited cases in that brief. (Transcript, September 17, 1990 at 33).

In a decision read into the record on August 27, 1990, this Court denied plaintiffs in 90 Civ. 5557's motion for temporary injunctive relief. (August 27, 1990 discovery Order). This Court further denied the application for a stay pending appeal of that order. (August 27, 1990 stay Order). On August 28, 1990, Joint Council 73 filed

a notice of appeal of the August 27, 1990 discovery Order, and an application for a stay pending of the August 27, 1990 discovery Order in the Court of Appeals. That application was subsequently withdrawn. On September 21, 1990, Joint Council 73 dismissed 90 Civ. 5557 pursuant to Fed.R.Civ.Pro. 41.

These motions for sanctions followed.

## II. Discussion

Both the Government and the Investigations Officer move separately for sanctions pursuant to pursuant to Fed.R.Civ.Pro. 11, 28 U.S.C. § 1927, and the court's inherent power.

Fed.R.Civ.Pro. 11, reproduced below, is intended to "discourage dilatory or abusive tactics and help to streamline the litigation process by lessening frivolous claims or defenses."[5] Advisory note, Fed.R.Civ.Pro. 11. In this circuit, sanctions are appropriate

> ... when it appears that a pleading has been interposed for any improper purpose, *or where*, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well founded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.

*O'Malley v. New York City Transit Authority*, 896 F.2d 704, 705–06 (2d Cir.1990), (emphasis in original), *quoting Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir.1985), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987). "This requirement assures that lawyers are prepared to demonstrate that they have done the necessary investigation prior to appearing in court." *International Shipping v. Hydra Offshore, Inc.*, 875 F.2d 388, 390 (2d Cir., 1989). A violation of Rule 11 makes "sanctions mandatory". *Oliveri v. Thompson*, 803 F.2d 1265, 1274 (2d Cir.1986), *cert. denied*, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987).

Rule 11 applies to "every paper signed during the course of the proceedings." *Id.* "Under Rule 11, the conduct of a signer is judged as of the time the paper is signed ...." *Greenberg v. Hilton International Co.*, 870 F.2d 926, 936 (2d Cir.), *rehearing granted and case remanded on other grounds*, 875 F.2d 39 (2d Cir.1989); *Oliveri v. Thompson, supra*, 803 F.2d at 1274. As a result, *"post hoc* sleight of hand" will not remedy a violation of Rule 11. *International Shipping v. Hydra Offshore, Inc., supra*, 875 F.2d at 390 (*quoting* Schwarzer, *Rule 11 Revisited*, 101 Harv.L.Rev. 1013, 1022 (1988)). "[C]ontinuing to press an obviously meritless lawsuit does tend to indicate bad faith and further supports the imposition of a Rule 11 sanction." *O'Malley v. New York City Transit Authority, supra*, 896 F.2d at 709; *City of Yonkers v. Otis Elevator Co.*, 844 F.2d 42, 49 (2d Cir., 1988).

When the conduct of counsel is at issue, an objective standard is applied. *O'Malley v. New York Transit Authority, supra*, 896 F.2d at 706; *Greenberg v. Hilton, supra*, 870 F.2d at 934. Under this objective standard, a showing of the attorney's "bad faith" is not required. *Id.* "Where a party represented by an attorney is the target of a Rule 11 motion, however, the subjective good faith test applies." *Id.;*

---

5. Rule 11 provides in relevant part:

"Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name ... The signature of an attorney or party ... constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay the other party or parties the amount of he reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee."

*Calloway v. Marvel Entertainment Group,* 854 F.2d 1452, 1474 (2nd Cir.1988).

■ The goals of Rule 11 sanctions may be "punishment of for violation of the Rule, compensation for victim of the violation, and deterrence of others ..." *McMahon v. Shearson/American Express Inc.,* 896 F.2d 17, 19 (2d Cir., 1990). As a result, the sanction imposed may be renumerative in nature, to reimburse parties for their attorneys' fees, or punitive, to discourage future sanctionable behavior. *Oliveri v. Thompson, supra,* 803 F.2d at 1274.

■ Title 28, Section 1927 of the United States Code, reproduced below, "imposes liability for misconduct on 'any attorney or other person admitted to conduct cases in any Court' " [6] *Oliveri v. Thompson, supra,* 803 F.2d at 1273, (*quoting* 28 U.S.C. § 1927). "[A]wards under § 1927 are only against attorneys ..." *Id.* In this circuit, sanctions are appropriate under 28 U.S.C. § 1927 when the attorney's actions demonstrate bad faith:

> Like an award made pursuant to the court's inherent power, an award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay.

*Id.* Sanctions under 28 U.S.C. § 1927 may be imposed for the commencement or conduct of a lawsuit. *Id.*

Finally, a court may impose sanctions "[u]nder the inherent power of the court to supervise and control its own proceedings ..." and may "award reasonable attorneys' fees to the prevailing party when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons * * * ' " *Id., quoting F.D. Rich Co., Inc. v. United States ex rel. Industrial Lumber Co., Inc.* 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974). In this circuit, such bad faith is demonstrated by:

> " 'clear evidence' that the challenged actions 'are entirely without color, and [are

taken] for reasons of harassment or delay or for other improper purposes' "

*Oliveri v. Thompson,* 803 F.2d at 1272, (*quoting Dow Chemical Pacific Ltd. v. Rascator Maritime S.A.,* 782 F.2d 329, 344 (2d Cir., 1986). The critical question is " '[w]hether a reasonable attorney could have concluded that the facts supporting the claim *might be established,* not whether such claims *actually have been established'* " *Dow Chemical Pacific, Ltd., v. Rascator Maritime, S.A., supra,* 782 F.2d at 344, (*quoting Nemeroff v. Abelson,* 620 F.2d 339, 348 (2d Cir., 1980) (emphasis in original).

## A. The Government's Sanction Motion

The Government moves for sanctions and costs against Joint Council 73 by its president Frank Carracino, and its counsel Caesar Guazzo, Mark Rushfield, and Delia Guazzo of the Guazzo firm in relation to the August 17, 1990 order to show cause.

The conduct of Joint Council 73 and their attorneys, the Guazzo firm, in refusing to cooperate with the Investigations Officer's examination of Joint Council 73's books and records warrants sanctions under Rule 11.

Under the objective standard, indeed under any standard, the behavior of the Guazzo firm is sanctionable under Rule 11 and 28 U.S.C. § 1927. Since the actions of the Guazzo firm violated both Rule 11 and § 1927, separate analyses are not needed. Further, the record indicates that the client, Joint Council 73, acted with the requisite "bad faith" necessary to be sanctioned under Rule 11.

■ With regard to counsel, under the objective standard to be applied to conduct of counsel, no attorney could have formed a "reasonable belief" that Joint Council 73 would not have to comply with the August 2, 1990 notice of intention to examine books and records.

The record indicates that Joint Council 73, in a letter dated August 8, 1990 letter,

---

**6.** "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexa-

tiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.

over signature of its counsel Delia Guazzo, refused to comply with the August 2, 1990 discovery request. When the agents of the Investigations Officer arrived at Joint Council 73's offices on August 16, 1990 to begin their inspection of its books and records, Joint Council 73 did not comply fully with the requests, and were not permitted to photocopy documents. On that same date, the Government advised Joint Council 73 through the Guazzo firm that they would initiate contempt proceedings against them should the examination be further hindered. The incomplete examination continued on August 17, 1990, prompting the August 17, 1990 order to show cause that followed. When the agents returned on August 21, 1990 at 9:00 a.m., Joint Council 73's offices were dark and closed, at the direction of Caesar Guazzo.

As of August 2, 1990, this Court and the Court of Appeals had ruled numerous times that subordinate entities of the IBT were bound by the disciplinary provisions of the Consent Decree. *See United States v. International Brotherhood of Teamsters, supra,* 905 F.2d at 622; November 2, 1989 Memorandum, *supra;* January 17, 1990 Opinion, *supra;* March 13, 1990 Opinion, *supra;* April 13, 1990 Memorandum, *supra;* July 20, 1990 Memorandum, *supra;* and July 23, 1990 Memorandum, *supra.* As of August 2, 1990, the Guazzo firm was undoubtedly aware of the above precedent, and therefore that the disciplinary provisions of the Consent Decree were binding on Joint Council 73. The Guazzo firm even cited the November 2, 1989 Memorandum and the January 17, 1990 Opinion in their recusal motion. All of the above cited cases were published in the West Federal Reporting system and available on computer databases (citations given *supra* ). Further, in the July 23, 1990 Memorandum dismissing 90 Civ. 1475, this Court specifically cited these cases in dismissing Joint Council 73's own collateral lawsuit. 741 F.Supp. at 493.

This behavior by the Guazzo firm was a flagrant example of "dilatory or abusive tactics" that violate Rule 11. Given the mountain of negative precedent, the Guazzo firm had no "reasonable belief" that

Joint Council 73 was not bound by the disciplinary portion of the Consent Decree, or that this Court would reverse its numerous previous rulings. *O'Malley v. New York City Transit Authority, supra,* 896 F.2d at 705. As a result, the Guazzo firm violated Rule 11 and sanctions are mandatory.

■ As for the client, Joint Council 73, its behavior violated Rule 11 under the subjective "bad faith" standard. The record demonstrates that Joint Council 73 had been a party to Consent Decree-related litigation for almost eight months prior to the August 2, 1990 notice of intention to inspect books and records. All of this Court's decisions regarding the IBT case have been reproduced in the IBT monthly magazine. *See* November 16, 1989 Order. Joint Council 73 was aware that as of July 23, 1990, this Court had dismissed its claims that as an entity rather than individual, it was not bound by the Consent Decree's disciplinary provisions. Joint Council 73 was aware that no stay of the July 23, 1990 Order was in place. As a result, Joint Council 73's actions may only be seen as a deliberate attempt to avoid complying with the legitimate document demand made by the Investigations Officer. Joint Council 73's actions were a conscious and intentional attempt to use litigation for the improper purpose of avoiding compliance with the legitimate discovery request of the Investigations Officer. Such behavior constitutes "bad faith" and must be sanctioned under Rule 11.

As a result, both the Guazzo firm, and their client Joint Council 73 have violated Rule 11 and shall be sanctioned in connection with the Government's August 17, 1990 order to show cause and the related proceedings.

■ More problematic is the Government's request for sanctions against Joint Council 73 and the Guazzo firm for their application for a stay pending appeal of the July 23, 1990 Memorandum. In making that application, Joint Council 73 and the Guazzo firm reiterated arguments that had no likelihood of success on the merits be-

fore this Court or the Court of Appeals given the prior rulings. The leisurely timing of that stay application cast further suspicion on any claim of irreparable harm. Joint Council 73 set the motion for a return date almost one month after the July 23, 1990 order was entered. In rejecting the stay application, this Court reiterated its longstanding rulings that subordinate entities of the IBT are bound by the Consent Decree. Further, this Court ruled that Joint Council 73 faced no irreparable harm from the document examination. (August 21, 1990 stay Order).

Despite the obvious dilatory nature of the stay application, Joint Council 73 was obligated by Fed.R.App.Pro. 8(a) to seek that stay in the District Court in the first instance before moving the Court of Appeals for a stay pending appeal. This Court can find no precedent in this circuit supporting a sanction for such an application, however meritless. Accordingly, absent precedent, this Court feels constrained from imposing sanctions for the stay application.

### B. The Investigations Officer's Sanction Motions

The Investigations Officer moves this Court to sanction the Guazzo firm, and its clients, Joint Council 73 under Rule 11 and 28 U.S.C. § 1927 for all litigation involving the continuation of 90 Civ. 1475 beyond the June 1, 1990 Opinion of the Court of Appeals. Further, the Investigations Officer argues the Guazzo firm and clients Joint Council 73 and Frank Carracino should be sanctioned for all proceedings involving 90 Civ. 5557.

#### 1. 90 Civ. 1475

The only further activity in 90 Civ. 1475 after June 1, 1990 was this Court's dismissal of the complaint on July 23, 1990, and the ensuing stay motion by Joint Council 73. As previously discussed, the Court feels constrained against imposing sanctions for that stay motion.

#### 2. 90 Civ. 5557

■ The Investigations Officer seeks sanctions against Joint Council 73, its president Frank Carracino, and the Guazzo firm

for their filing and prosecution of 90 Civ. 5557. 90 Civ. 5557 was filed for plaintiffs Joint Council 73 and Frank Carracino by their counsel, the Guazzo firm, on August 27, 1990. Together with the filing of the complaint, an order to show cause and a temporary restraining order were brought to enjoin the Investigations Officer from taking the sworn statements of several members of the general executive board of Joint Council 73, including Frank Carracino.

90 Civ. 5557 is a case study in vexatious, harassing litigation brought without any proper purpose—exactly the sort of litigation sanctionable by Rule 11 and 28 U.S.C. § 1927. This is so for three reasons. First, the claims made in the complaint of 90 Civ. 5557 were indistinguishable to the relief sought in the dismissed 90 Civ. 1475, and thereby contrary to established law. Second, the conduct of the Guazzo firm and Joint Council 73 as manifested in the timing and method they employed in bringing 90 Civ. 5557 demonstrates an outrageous abuse of the legal process. Finally, the member of the Guazzo firm who argued the motion for the temporary restraining order violated the most basic responsibility of a lawyer to her client and the court—to be prepared in court. The litigation involving 90 Civ. 5557 was lawyer-driven, and demonstrated both the objective bad faith required for sanctions under Rule 11, and the subjective bad faith for sanctions under § 1927. For these reasons, additional sanctions must be imposed against the counsel of record for the Guazzo firm for the filing and prosecution of 90 Civ. 5557.

First, the relief sought in the complaint to 90 Civ. 5557 was contrary to all established law, and had no basis in law or fact. 90 Civ. 5557 sought declaratory judgments ruling that (1) the Investigations Officer's August 16, 1990 demand to take sworn statements was violative of the IBT constitution, and (2) that the Consent Decree is not binding on unrepresented parties such as Joint Council 73. The complaint also sought a preliminary injunction barring the Investigations Officer from taking the sworn statements in his August 16, 1990

notices. 90 Civ. 5557 made virtually identical claims for relief as the dismissed complaint in 90 Civ. 1475.

There can be no doubt that counsel of record at the Guazzo firm were actually aware that the relief sought in 90 Civ. 5557 was contrary to every precedent in this vast case, made no good faith argument for reversal of that precedent, and had no grounding in fact. It has been stated *ad nauseam* that on June 1, 1990, the Second Circuit held that disciplinary powers of the Court Officers spelled out in the Consent Decree were properly derived from the IBT constitution, and binding on non-signatory entities of the IBT.

Accordingly, the relief sought complaint in 90 Civ. 5557 was utterly contrary to established law and fact, such that "a competent attorney could not form a reasonable belief that the pleading is well founded in fact and is warranted by existing law ..." and thereby violative of Rule 11.

Second, the timing and method of filing the complaint in 90 Civ. 5557 and the bringing of the order to show cause and temporary restraining order by the Guazzo firm reveal an even more egregious and damning violation of Rule 11 and § 1927. Examining the sequence of events that unfolded over August 27 and 28, 1990 uncovers an appalling abuse of the legal process of this Court to promote the malignant aim of delay.

The Investigations Officer sent his notices of intention to take sworn statements on August 16, 1990, with the sworn statements to begin on August 28, 1990. The Guazzo firm waited until the afternoon of August 27, 1990, less than 24 hours before the sworn statements were to begin, to file 90 Civ. 5557 and seek immediate injunctive relief. Since they proceeded to the part I judge, the Guazzo firm was aware that I was on vacation when they brought the order.[7]

In my absence, the TRO and order to show cause were brought to the part I judge (Hon. Robert Patterson, D.J.), who then contacted my chambers. My cham-

bers immediately consulted with me and then contacted the part I judge, who signed the order to show cause, struck the TRO, and set the hearing on the preliminary injunction down for 6:30 p.m. on August 27, 1990—that same evening—in East Quogue, New York. My chambers then contacted the Government and the Investigations Officer, and informed them of the upcoming hearing.

This Court held a hearing beginning at 6:30 p.m. on August 27, 1990, in East Quogue, New York, on the application for the preliminary injunction. After hearing argument, this Court denied the injunctive relief. This court ruled that impending sworn statements to be taken by the Investigations Officer did not constitute irreparable harm. Further, the Court noted that of the numerous documented applications to this Court by IBT members seeking similar relief, none had been granted during the fifteen months that the Consent Decree had been in force. (August 27, 1990 discovery Order). Additionally, Joint Council 73 applied for a stay pending appeal at the hearing, which was also denied. (August 27, 1990 stay Order).

On August 28, 1990, Caesar Guazzo of the Guazzo firm argued Joint Council 73's motion for a stay pending appeal of the August 21, 1990 discovery Order before the Court of Appeals during the 10:00 a.m. motion calendar. The Government had cross-moved the Court of Appeals to dismiss the appeal, and for sanctions. The Court of Appeals denied the stay application, and denied the Government's motion for sanctions, from the bench.

The motive behind the timing of the August 27, 1990 application for immediate injunctive relief was crystal clear—to delay the next day's sworn statements. The obvious meritlessness of 90 Civ. 5557 and the accompanying application for immediate injunctive relief was irrelevant to the aim of achieving delay. Why that is so is obvious. Seeking such last minute relief while I was away could directly delay the sworn state-

---

7. Joint Council 73 and the Guazzo firm had been to an earlier preliminary injunction hear-

ing in Quogue, New York one week before they brought 90 Civ. 5557.

ments if the part I judge (1) signed the TRO directly enjoining the sworn statements, or (2) signed the order to show cause and set down some later date for a hearing on the preliminary injunction when I had returned.

But even in the event that the part I judge rejected the TRO *and* returned the order to show cause unsigned, Joint Council 73 and the Guazzo firm still believed they could delay the sworn statements. The Guazzo firm believed the denial of their TRO or preliminary injunction was appealable, because they moved this Court for a stay pending appeal at the August 27, 1990 hearing (and filed a notice of appeal of that order the next day). Their application rejected, they could then move the district court, and then the Court of Appeals, for a stay pending appeal of the denial of the injunctions.[8]

Not coincidentally, the Second Circuit's regular motion calendar is heard on Tuesdays, at 10:00 a.m. 90 Civ. 5557 was stamped as filed with the district court at 2:06 p.m. on Monday, August 27, 1990. As a further indication, Joint Council 73's motion for a stay pending appeal of the August 21, 1990 discovery Order was scheduled to be argued before the Second Circuit as part of the motion calendar on August 28, 1990 at 10:00 a.m.

Therefore, even if all the injunctive relief sought was immediately rejected, Joint Council 73 and the Guazzo firm believed they could *still* delay the sworn statements scheduled for August 28, 1990 because on the morning of August 28, 1990, they could ask the Court of Appeals to also hear their motion for a stay pending appeal of the district court's denial of their TRO and preliminary injunction.

The purpose of 90 Civ. 5557 is then abundantly clear. It was a deliberate, lawyer-driven tactical device carefully calculated to delay the sworn statements to be taken by the Investigations Officer on August 28, 1990. Because plaintiffs waited over ten

days from the date they received the notice of sworn statements to move for immediate injunctive relief, any claim of immediacy was completely and totally self-created and therefore utterly unpersuasive.

Employing such tactics in bringing a meritless action to delay legitimate discovery is a clear and unambiguous violation of Rule 11. Further, it is undeniable that those tactics were "undertaken for some improper purpose such as delay" and thereby violative of 28 U.S.C. § 1927.

Third, the conduct of counsel for Joint Council 73 at the hearing held on August 27, 1990 on their application for preliminary injunctive relief demonstrated insufficient preparation, and further belied the improper purpose of that application.

Counsel for Joint Council 73, Delia Guazzo, Esq., objected to the immediacy of the hearing for the preliminary injunction application. The hearing on the application was held 4½ hours after 90 Civ. 5557 was filed and the order to show cause and application for the TRO brought. It is inexplicable how counsel could object to an expedited hearing on her own application for a TRO—since by Fed.R.Civ.Pro. 65. a motion for a TRO must demonstrate immediate, irreparable harm.

Further, counsel for Joint Council 73 was unprepared to argue her own motion. Delia Guazzo was unable to answer the most logical question this Court could ask—namely, to factually distinguish the cases cited in her brief in support of injunctive relief from the numerous prior applications for such relief rejected in this case. This is apparent from the transcript of that hearing.

> THE COURT: Are you able to illuminate all of these citations by giving me the factual content of this case?
>
> MS. GUAZZO: I cannot at this time, sir. . . .

(Transcript at 11–12).

\* \* \* \* \* \*

8. Despite their obvious belief that they could appeal such an order, the Guazzo firm ignored recent direct authority of the Second Circuit holding to the contrary. "[A]n order compelling the witness to produce evidence in a crimi-

nal or civil case may be challenged by the witness only on appeal from an adjudication of contempt." *In re Application of American Tobacco Company, et al.,* 866 F.2d 552, 554 (2d Cir.1989).

THE COURT: Then you had occasion to look at the citations, haven't you?

MS. GUAZZO: Specific references I have given to you, I have not been able to review in view of the press of time.

THE COURT: How are you able to draw upon them and cite them?

MS. GUAZZO: Because at the time I researched them, your honor, I found them to be appropriate.

THE COURT: You must have some familiarity with these cases.

MS. GUAZZO: I would say, your honor, extant.....

(Transcript at 13).

\*　　\*　　\*　　\*　　\*　　\*

In this circuit, a most basic requirement of Rule 11 is that "lawyers are prepared to demonstrate that they have done the necessary investigation prior to appearing in court." *International Shipping v. Hydra Offshore, Inc., supra*, 875 F.2d at 254. Delia Guazzo demonstrably failed that obligation. This is further indication that 90 Civ. 5557 was a violation of Rule 11.

### C. The Sanction to be Imposed

As a result of the violations of Rule 11 by the Guazzo firm and Joint Council 73, the Court must impose appropriate sanctions for their conduct. The counsel of record for the Guazzo firm and Joint Council 73 by its president Frank Carracino must be equally liable for attorneys' fees in connection with the Government's motion for sanctions for the bringing of the August 17, 1990 order to show cause, and for this motion for sanctions. The counsel of record for the Guazzo firm must be sanctioned for attorney's fees resulting from 90 Civ. 5557. Further, for their egregious conduct in bringing 90 Civ. 5557, a deterrent sanction must also be imposed on counsel of record for the Guazzo firm.

In their papers, the Government submitted an affidavit that in connection with the August 17, 1990 order to show cause and the August 21, 1990 hearing, Assistant United States Attorney Peter C. Sprung spent 25.50 hours. Assistant United States Attorney Edward T. Ferguson, III averred that he spent 26.25 hours in connection with the instant sanctions motion. A reasonable hourly billing rate for attorneys with eight years experience, such as Mr. Sprung, is $210 per hour. A reasonable hourly billing rate for Mr. Ferguson, with ten years experience, is $250 per hour. These rates are comparable to those charged for attorneys with like experience in private practice. The total value of the time spent by the Government's attorneys is $11,917.50.

In the Government's papers, they have not set out the amount of time spent on the proceedings involving 90 Civ. 5557. The Government should submit a further affidavit setting out that information.

The Investigations Officer is ordered to submit an affidavit detailing the time spent in connection with (1) the August 17, 1990 order to show cause; (2) the August 27, 1990 order to show cause; and (3) preparation of the instant contempt motions.

■ But the continuing bad faith demonstrated by the Guazzo firm in its repeatedly undertaking meritless, vexatious and harassing litigation warrants an additional punitive sanction. The Guazzo firm "has demonstrated a blatant disregard of the rules and regulations which permit the judiciary to function smoothly." *Warner Brothers Inc., v. Dae Rim Trading, Inc.* 877 F.2d 1120, 1128 (2d Cir.1989). Accordingly, for the pattern of behavior undertaken during August of 1990, counsel that have appeared for the Guazzo firm, Caesar Guazzo, Mark Rushfield, and Delia Guazzo, shall be sanctioned $25,000.

Since not all the expenses are in the record before the Court, no judgment will be entered until the requested affidavits are submitted to the Court. At that time, the Court will enter final judgment of the sanctions to be imposed.

*Conclusion*

For the reasons stated above, the Government's motion for sanctions is hereby granted consistent with this order. The Investigations Officer's motion for sanctions is also granted consistent with this order. The Investigations Officer and the Government are directed to submit affida-

vits as directed no later than February 14, 1991.

So Ordered.