948 F.2d 1338
 138 L.R.R.M. (BNA) 2839, 120 Lab.Cas. P 11,014,
21 Fed.R.Serv.3d 304
 UNITED STATES of America, Plaintiff-Appellee,
Charles M. Carberry, Investigations Officer of the
International Brotherhood of Teamsters,
Chauffeurs, Warehousemen and Helpers of
America, Appellee,
v.
INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS,
WAREHOUSEMEN AND HELPERS OF AMERICA, AFL-CIO; The
Commission of La Cosa Nostra; Anthony Salerno, also known
as Fat Tony; Matthew Ianniello, also known as Matty the
Horse; Nunzio Provenzano, also known as Nunzi Pro; Anthony
Corallo, also known as Tony Ducks; Salvatore Santoro, also
known as Tom Mix; Christopher Furnari, Sr., also known as
Christie Tick; Frank Manzo; Carmine Persico, also known as
Junior, also known as The Snake; Gennaro Langella, also
known as Gerry Lang; Philip Rastelli, also known as Rusty;
Nicholas Marangello, also known as Nicky Glasses; Joseph
Massino, also known as Joey Messina; Anthony Ficarotta,
also known as Figgy; Eugene Boffa, Sr.; Francis Sheeran;
Milton Rockman, also known as Maishe; John Tronolone, also
known as Peanuts; Joseph John Aiuppa, also known as Joey
O'Brien, also known as Joe Doves, also known as Joey Aiuppa;
John Phillip Cerone, also known as Jackie the Lackie, also
known as Jackie Cerone; Joseph Lombardo, also known as Joey
the Clown; Angelo Lapietra, also known as The Nutcracker;
Frank Balistrieri, also known as Mr. B; Carl Angelo Deluna,
also known as Toughy; Carl Civella, also known as Corky;
Anthony Thomas Civella, also known as Tony Ripe; General
Executive Board, International Brotherhood of Teamsters,
Chauffers, Warehousemen and Helpers of America; Jackie
Presser, General President; Weldon Mathis, General
Secretary-Treasurer; Joseph Trerotola, also known as Joey
T., First Vice President; Robert Holmes, Sr., Second Vice
President; William J. McCarthy, Third Vice President;
Joseph W. Morgan, Fourth Vice President; Edward M. Lawson,
Fifth Vice President; Arnold Weinmeister, Sixth Vice
President; John H. Cleveland, Seventh Vice President;
Maurice R. Schurr, Eighth Vice President; Donald Peters,
Ninth Vice President; Walter J. Shea, Tenth Vice President;
Harold Friedman, Eleventh Vice President; Jack D. Cox,
Twelfth Vice President; Don L. West, Thirteenth Vice
President; Michael J. Riley, Fourteenth Vice President;
Theodore Cozza, Fifteenth Vice President; Daniel Ligurotis,
Sixteenth Vice President, and Salvatore Provenzano, also
known as Sammy Pro, Former Vice President, Defendants,
Joint Council 73, an Affiliate of the International
Brotherhood of Teamsters, Chauffeurs, Warehousemen and
Helpers of America; Frank Carracino; Caesar Guazzo; Mark
Rushfield; Delia Guazzo; and Guazzo, Perelson, Rushfield &
Guazzo, Appellants.
 Nos. 1994, 1995, Dockets 91-6100, 91-6102 and 91-6104.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 10, 1991.
Decided Nov. 8, 1991.
 
 Geoffrey C. Hazard, Jr., New Haven, Conn., for appellants.
 Victor O. Olds, Asst. U.S. Atty. (Otto G. Obermaier, U.S. Atty., Edward T. Ferguson, III, Asst. U.S. Atty., S.D.N.Y., of counsel), for plaintiff-appellee.
 Bruce A. Green, New York City (Charles M. Carberry, Investigations Officer), for appellee.
 Before KEARSE, MINER and McLAUGHLIN, Circuit Judges.
 McLAUGHLIN, Circuit Judge:
 
 
 1
 We are called on by appellants--Joint Council 73, an affiliate of the International Brotherhood of Teamsters; Frank Carracino, the president of Joint Council 73; Joint Council 73's attorneys Caesar Guazzo, Mark Rushfield, and Delia Guazzo; and the law firm of Guazzo, Perelson, Rushfield & Guazzo--to review the imposition of sanctions by the United States District Court for the Southern District of New York (Edelstein, Judge ). For the reasons set forth below, we vacate the order imposing sanctions and remand to the district court for further proceedings.
 
 BACKGROUND
 
 2
 The tortuous--not to say Byzantine--path of the Teamsters Litigation need not be recounted here. In March, 1989, the government entered into a court-approved settlement agreement (the "Consent Decree") with the International Brotherhood of Teamsters ("IBT") and its General Executive Board ("GEB") in full settlement of a civil RICO action brought to purge the IBT and its GEB of the pernicious influence of organized crime. The Consent Decree explicitly stated that the district court will maintain exclusive jurisdiction over the case.
 
 
 3
 The Consent Decree required the district court to appoint three supervisory officials--an Independent Administrator, an Investigations Officer, and an Elections Officer. The Investigations Officer, an appellee here, was commissioned to investigate and bring charges against allegedly corrupt IBT members. The Consent Decree expressly authorized the Investigations Officer to examine the books and records of the IBT and its affiliates, and to take sworn, in-person examinations of "any officer, member, or employee of the IBT."
 
 Joint Council 73's First Action
 
 4
 In December, 1989, the Investigations Officer notified, among others[1], Joint Council 73, an IBT affiliate located in New Jersey, that he wanted to examine its books and records. Uneager to comply with this demand, Joint Council 73 sued in the United States District Court for the District of New Jersey to enjoin the Investigations Officer from executing his document demand. Joint Council 73 argued that it was not bound by the Consent Decree because it was not a party to the underlying action that was settled by the Consent Decree, and that the authority asserted by the Investigations Officer amounted to a violation of the IBT Constitution. One month earlier, in a separate action filed by Harold Friedman and Anthony Hughes, two elected officials of an IBT affiliate, Judge Edelstein had rejected a similar challenge to the Consent Decree's disciplinary mechanism, holding that the IBT had represented its entire membership, including affiliates, in negotiating the Consent Decree. See United States v. International Brotherhood of Teamsters, 725 F.Supp. 162, 168 (S.D.N.Y.1989), aff'd, 905 F.2d 610 (2d Cir.1990) [hereafter Friedman and Hughes ].
 
 
 5
 In January, 1990, in response to a number of actions challenging the Consent Decree, Judge Edelstein, pursuant to the All Writs Act, 28 U.S.C. § 1651, ordered that all future actions challenging the Consent Decree be filed in the Southern District of New York. See United States v. International Brotherhood of Teamsters, 728 F.Supp. 1032, 1045 (S.D.N.Y.), aff'd, 907 F.2d 277 (2d Cir.1990). Judge Edelstein then directed Joint Council 73 either to dismiss its New Jersey lawsuit or to transfer it to the Southern District of New York. Joint Council 73 objected to either course of action. Thereafter, the district court in New Jersey ordered Joint Council 73's action transferred to the Southern District of New York.
 
 
 6
 After the transfer, Judge Edelstein held a status conference, at which he granted the Investigations Officer leave to file a motion to dismiss Joint Council 73's action, and granted the government leave to intervene. The Investigations Officer filed his motion in March, 1990. Joint Council 73 opposed the motion and cross-moved for the recusal of Judge Edelstein, alleging that because his prior rulings demonstrated bias against Joint Council 73, he was unwilling to entertain their arguments. Judge Edelstein denied the recusal motion. Joint Council 73 v. International Brotherhood of Teamsters, 734 F.Supp. 626 (S.D.N.Y.1990).
 
 
 7
 In June, 1990, this Court affirmed the Friedman and Hughes decision. Friedman and Hughes, 905 F.2d 610 (2d Cir.1990). Hughes had argued to us that he was not bound by the disciplinary mechanism of the Consent Decree because he was not a signatory to the decree, and because the IBT and the GEB lacked the authority to amend the disciplinary mechanism of the IBT Constitution in any consent decree. We rejected this argument, holding that Hughes was bound by the disciplinary mechanism of the Consent Decree
 
 
 8
 because the investigatory and disciplinary powers of the court-appointed officers are proper delegations of the powers of the IBT General President and the GEB within the scope of the IBT Constitution that binds all members of the IBT, and because the IBT Constitution, in Article XXVI, section 2, contemplates amendment by the GEB, under the circumstances of this case, as a result of judicial direction.
 
 
 9
 Id. at 622.
 
 
 10
 In July, 1990, the district court, relying in large measure on this Court's decision in Friedman and Hughes, as well as our affirmance of the district court's order pursuant to the All Writs Act, see 907 F.2d 277 (2d Cir.1990), dismissed Joint Council 73's action and dissolved the previously-entered stay of the Investigations Officer's document demand. Joint Council 73 v. International Brotherhood of Teamsters, 741 F.Supp. 491 (S.D.N.Y.1990). Joint Council 73 immediately moved the district court to stay its dismissal order. The district court reserved decision on the motion for a stay.
 
 
 11
 In August, 1990, the Investigations Officer renewed his demand to examine the books and records of Joint Council 73. On August 8, 1990, appellant Delia Guazzo, attorney for Joint Council 73, wrote to the Investigations Officer, informing him that her client would refuse to comply with the document demand, ostensibly because the stay application was still pending before Judge Edelstein. The Investigations Officer responded by letter, dated August 9, 1990, that no stay was actually in place and that he intended to commence his inspection on August 16, 1990.
 
 
 12
 A week later, several investigators arrived at the offices of Joint Council 73 and were admitted; but, allegedly at the direction of appellant Caesar Guazzo, the investigators' access to relevant documents was limited, and eventually they were asked to leave early. The next day, the investigators made another unsuccessful attempt to examine Joint Council 73's books. The government then moved to hold Joint Council 73 and Caesar Guazzo in contempt. At a hearing on August 21, 1990, Judge Edelstein ordered Joint Council 73, on pain of contempt, to provide "unobstructed and unimpeded" discovery of its books and records. At that same conference, Judge Edelstein denied Joint Council 73's outstanding motion for a stay of his dismissal order.
 
 
 13
 Joint Council 73 next sought the assistance of this Court, filing a notice of appeal from Judge Edelstein's discovery order and seeking a stay of that order. A temporary stay was granted, but, after oral argument, this Court summarily denied the stay application. Thereafter, on August 28, 1990, the district court again ordered Joint Council 73 to produce its books and records. This time Joint Council 73 complied.
 
 Joint Council 73's Second Action
 
 14
 While the discovery dispute was raging over books and records, a secondary campaign was being waged over deposition testimony. On August 16, 1990, the Investigations Officer notified Joint Council 73 that he wanted to take sworn, in-person examinations of seven of its officers and employees. These examinations were scheduled for August 28, 1990. Joint Council 73 responded as it had in the documents battle: it filed another lawsuit. On August 27, 1990, the eve of the scheduled examinations, Joint Council 73 moved, by order to show cause, for a preliminary injunction to enjoin the examinations. Attorney Delia Guazzo brought the order to show cause to the Part I Judge in the Southern District of New York. Judge Patterson, who was sitting as the Part I Judge that day, signed the order to show cause, but struck the language that would have granted a temporary restraining order; and Judge Patterson ordered the parties to appear before Judge Edelstein at 6:30 that evening in East Quogue for a hearing on whether a preliminary injunction should issue.
 
 
 15
 At the Quogue hearing, Delia Guazzo repeated the now-familiar arguments advanced in Joint Council 73's first action contesting the document demand--i.e., that Joint Council 73 was not bound by the Consent Decree. Judge Edelstein denied Joint Council 73's motion for injunctive relief and also denied a motion to stay that order.
 
 Sanctions Motions
 
 16
 The government and the Investigations Officer subsequently made separate motions for sanctions pursuant to both Rule 11 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1927. The government's motion added a third ground for sanctions: the court's inherent power.
 
 
 17
 As to the government's motion, the district court stated that since the conduct of the attorneys, as distinct from their client, was sanctionable under both Rule 11 and section 1927, "separate analyses [were] not needed." United States v. International Brotherhood of Teamsters, 134 F.R.D. 50, 59 (S.D.N.Y.1991). In imposing sanctions on both client and counsel, however, the district court relied solely on Rule 11. Both the attorneys of record (Delia Guazzo, Mark Rushfield, and Caeser Guazzo) and their client, Joint Council 73, by its president Frank Carracino, were sanctioned, pursuant to Rule 11, in the amount of $11,917.50 in attorneys' fees. Id. at 64.
 
 
 18
 With regard to the Investigations Officer's motion, the district court held that Joint Council 73's attorneys would be sanctioned for their conduct in bringing the second lawsuit on August 27, 1990. He stated that this second action was "a case study in vexatious, harassing litigation brought without any proper purpose--exactly the sort of litigation sanctionable by Rule 11 and 28 U.S.C. § 1927." Id. at 61. Because the Investigations Officer had not detailed the number of hours he had spent working on the sanctionable matters, the district court ordered that he submit a supplemental affidavit to that effect. The district court also ordered that a $25,000 punitive sanction be imposed on counsel of record, Caesar Guazzo, Mark Rushfield, and Delia Guazzo, because of their "egregious conduct" in bringing the second action. Id. at 64.
 
 
 19
 After receiving the Investigations Officer's affidavit, the district court issued a supplemental order, in which it determined that the Investigations Officer was entitled to $5,687.50 in attorneys' fees. In this supplemental order, the district court set the total amount of attorneys' fees for both the government and the Investigations Officer at $17,605 (i.e., $11,917.50 plus $5,687.50). Counsel of record was assessed one half of this amount, and Joint Council 73's president Frank Carracino was held personally liable for the other half. The court went on to state that "the amount of the punitive sanction should be proportional to the actual costs incurred by the sanctionable matters," and therefore reduced the punitive sanction against counsel of record to $15,000.
 
 
 20
 Appellants now ask us to reverse the sanctions order.
 
 DISCUSSION
 
 21
 We do not take issue with Judge Edelstein's exposition of the different standards for imposing sanctions. We are troubled, however, that the standards applied in this case might have led to an unjust result. Because we deem it appropriate for the district court to have a full opportunity to articulate which standard it is applying when it levies sanctions, we vacate the sanctions awards and remand for further proceedings.
 
 
 22
 The three bases for imposing sanctions in this case are Rule 11, 28 U.S.C. § 1927, and the court's inherent power. Each has a remarkably different history and requires separate analysis.
 
 Rule 11
 
 23
 Drawing a line between zealous advocacy and frivolous conduct, Rule 11 provides a vehicle for sanctioning an attorney, a client, or both.[2] See Fed.R.Civ.P. 11; Cooter & Gell v. Hartmarx Corp., --- U.S. ----, 110 S.Ct. 2447, 2457, 110 L.Ed.2d 359 (1990) (Rule 11 is "aimed at curbing abuses of the judicial system"); Oliveri v. Thompson, 803 F.2d 1265, 1274 (2d Cir.1986), cert. denied, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987). By its terms, Rule 11 requires an attorney to sign every pleading, motion, or other paper submitted on behalf of his client, and the attorney is subject to sanctions if the document he signs violates the strictures of Rule 11. See Oliveri, 803 F.2d at 1274. Rule 11 subjects the client--"the represented party"--to sanctions even if he has not signed the offending paper. See id.
 
 
 24
 The cornerstone of Rule 11 is the certification requirement; that is, Rule 11 sanctions must be based on the signature of an attorney or client on a pleading, motion, or other paper in a lawsuit. Business Guides, Inc. v. Chromatic Communications Enterprises, Inc., --- U.S. ----, 111 S.Ct. 922, 929, 112 L.Ed.2d 1140 (1991); Oliveri, 803 F.2d at 1274. Rule 11, perforce, cannot be invoked unless some signed pleading, motion, or other paper is filed. As we have noted, Rule 11 "does not license a district court to sanction any action by an attorney or party that it disapproves of.... Imposition of sanctions must be based on a pleading, motion or other paper signed and filed in federal court...." McMahon v. Shearson/American Express, Inc., 896 F.2d 17, 22 (2d Cir.1990) (citations omitted).
 
 
 25
 Assuming the existence of identifiable, signed papers, a court must next determine whether those papers comply with Rule 11. A pleading, motion, or other paper violates Rule 11 either when it
 
 
 26
 has been interposed for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law.
 
 
 27
 Eastway Constr. Corp. v. City of New York, 762 F.2d 243, 254 (2d Cir.1985) (emphasis in original), cert. denied, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987); see O'Malley v. New York City Transit Auth., 896 F.2d 704, 705-06 (2d Cir.1990). In deciding whether the signer of a pleading, motion, or other paper has crossed the line between zealous advocacy and plain pettifoggery, the court applies an objective standard of reasonableness.[3] Business Guides, Inc., 111 S.Ct. at 932-33.
 
 
 28
 Because the Rule 11 violation occurs when the offending paper is signed, a court must determine whether the certification requirement has been flouted by focusing on the situation existing when the paper was signed. See Oliveri, 803 F.2d at 1274. The Court must not allow hindsight to skew its judgment. The converse, however, holds true as well. Pleadings, motions, and other papers must be justifiable at the time they are signed; this Court will not countenance belated rationalizations concocted to conceal chicanery. See International Shipping Co., S.A. v. Hydra Offshore, Inc., 875 F.2d 388, 390-91 (2d Cir.) (court will not tolerate " 'post hoc sleight of hand' "), cert. denied, 493 U.S. 1003, 110 S.Ct. 563-64, 107 L.Ed.2d 558 (1989).
 
 
 29
 If Rule 11 has been violated, sanctions are mandatory. Fed.R.Civ.P. 11 (sanctions "shall" be imposed); Oliveri, 803 F.2d at 1274. The particular sanction fashioned may reflect, inter alia, the need to reimburse the party against whom the offending papers have been interposed, or it may take on a more punitive hue to deter further abuses. See McMahon, 896 F.2d at 21. Finally, we review a district court's Rule 11 decision under an abuse of discretion standard, mindful that a material error of law or a "clearly erroneous assessment of the evidence" is an abuse of discretion. Cooter & Gell, 110 S.Ct. at 2461.
 
 28 U.S.C. § 1927
 
 30
 Another basis for sanctions lies in 28 U.S.C. § 1927:Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.
 
 
 31
 By its terms, § 1927 looks to unreasonable and vexatious multiplications of proceedings; and it imposes an obligation on attorneys throughout the entire litigation to avoid dilatory tactics. See Oliveri, 803 F.2d at 1274. The purpose of this statute is "to deter unnecessary delays in litigation." H.R.Conf.Rep.No. 1234, 96th Cong., 2d Sess. 8, reprinted in 1980 U.S.Code Cong. & Admin. News 2716, 2782; see Oliveri, 803 F.2d at 1273. Bad faith is the touchstone of an award under this statute. See McMahon, 896 F.2d at 23. We have held that "an award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." Oliveri, 803 F.2d at 1273. In contrast with sanctions under Rule 11, awards pursuant to § 1927 may be imposed only against the offending attorney; clients may not be saddled with such awards. Id.
 
 Inherent Power
 
 32
 Finally, a court has a third means at its disposal for sanctioning improper conduct: its inherent power. This power stems from the very nature of courts and their need to be able " 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.' " Chambers v. NASCO, Inc., --- U.S. ----, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991) (quoting Link v. Wabash R.R. Co., 370 U.S. 626, 630-31, 82 S.Ct. 1386, 1388-89, 8 L.Ed.2d 734 (1962)). One component of a court's inherent power is the power to assess costs and attorneys' fees against either the client or his attorney where a party has " 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.' " Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 258-59, 95 S.Ct. 1612, 1622-23, 44 L.Ed.2d 141 (1975) (quoting F.D. Rich Co. v. United States ex rel. Industrial Lumber Co., 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974)). Sanctions imposed under a court's inherent power--commonly known as the bad faith exception to the "American Rule" against fee shifting--"depend[ ] not on which party wins the lawsuit, but on how the parties conduct themselves during the litigation." Chambers, 111 S.Ct. at 2137.
 
 
 33
 The Supreme Court has cautioned that because of the "very potency" of a court's inherent power, it should be exercised "with restraint and discretion." Id. at 2132. As we made clear in Oliveri, this Court, in recognizing the need for restraint, has always required a particularized showing of bad faith to justify the use of the court's inherent power:
 
 
 34
 [W]e have declined to uphold awards under the bad-faith exception absent both " 'clear evidence' that the challenged actions 'are entirely without color, and [are taken] for reasons of harassment or delay or for other improper purposes' " and "a high degree of specificity in the factual findings of [the] lower courts."
 
 
 35
 Oliveri, 803 F.2d at 1272 (quoting Dow Chem. Pac. Ltd. v. Rascator Maritime S.A., 782 F.2d 329, 344 (2d Cir.1986) (citations omitted)).
 
 
 36
 We now turn to the sanctions imposed here. We are discomfitted by the procedures that were followed in meting out the sanctions. On the government's motion, the district court sanctioned both the attorneys from "the Guazzo firm" and Joint Council 73's president Frank Carracino. The district court concluded that "the behavior of the Guazzo firm is sanctionable under Rule 11 and 28 U.S.C. § 1927. Since the actions of the Guazzo firm violated both Rule 11 and § 1927, separate analyses are not needed. " 134 F.R.D. at 59 (emphasis added). The district court then went on to impose sanctions against both the attorneys and the client, but solely on the basis of Rule 11. Id. at 64.
 
 
 37
 As already noted, significant differences exist between Rule 11 and § 1927. For instance, Rule 11 sanctions may be imposed on both counsel and client, while § 1927 applies only to counsel. A Rule 11 violation must be based on signed pleadings, motions, or other papers. Section 1927 violations do not hinge on the presence of a paper. Rule 11 may not be employed to sanction obnoxious conduct during the course of the litigation; whereas § 1927 applies to the unreasonable and vexatious multiplication of court proceedings. Rule 11 requires only a showing of objective unreasonableness on the part of the attorney or client signing the papers, but § 1927 requires more: subjective bad faith by counsel. Finally, misconduct under Rule 11 must be judged as of the time the paper was signed, whereas § 1927 invites attention to a course of conduct, and imposes a continuing obligation on attorneys to avoid dilatory tactics.
 
 
 38
 It is clear, therefore, that separate consideration of the available sanctions machinery is not only warranted, but necessary for meaningful review. We agree with the Third Circuit that
 
 
 39
 sanctions under Rule 11 must be treated and determined separately from those that may be imposed under § 1927. The resulting findings must appear with reasonable specificity in terms of the perceived misconduct and the sanctioning authority.
 
 
 40
 Jones v. Pittsburgh Nat'l Corp., 899 F.2d 1350, 1359 (3d Cir.1990).
 
 
 41
 The conduct sanctioned here occurred between the time Joint Council 73's first action was dismissed and the point at which Joint Council 73's continued refusal to comply with the Investigations Officer's document demand required the government to move for an order of contempt. During that period, only the outstanding stay application was pending before the district court. The district court correctly held that this stay application was not sanctionable because Fed.R.App.P. 8(a) requires a party to seek a stay in the district court prior to asking the court of appeals for a stay. See 134 F.R.D. at 61. Thus, for Rule 11 purposes, the only paper in the record that was signed during the relevant time period appears to be the letter from appellant Delia Guazzo to the Investigations Officer, dated August 8, 1990, stating that Joint Council 73 refused to comply with the document demand because of its pending motion for a stay before the district court. Two problems arise. First, was this letter the basis for the Rule 11 sanction? Second, does this letter provide a basis for Rule 11 sanctions against all the attorneys of record?
 
 
 42
 Assuming this letter to be sufficient to trigger Rule 11[4], the district court never connected the signing of this letter to any allegedly unreasonable conduct. Rather, it characterized the scenario played out after this letter as a "flagrant example of 'dilatory or abusive tactics' that violate Rule 11." 134 F.R.D. at 60. Phrases such as "dilatory or abusive tactics" seem to evoke, if not invoke, § 1927, rather than Rule 11, especially when, as here, such a phrase is used to describe conduct during a proceeding. If this letter did not violate Rule 11, neither counsel nor client may be sanctioned under Rule 11.
 
 
 43
 We would not be surprised if Delia Guazzo's letter were found to violate Rule 11. That, however, is a judgment wisely committed to the district court in the first instance. We ask only that the district court specify the sanctionable conduct and the authority for the sanction. F.H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d 1250, 1268 (2d Cir.1987) (district court's order of Rule 11 sanctions must be sufficiently specific as to which papers violate Rule 11).
 
 
 44
 There is another problem. Assuming that Delia Guazzo's August 2, 1990 letter merited Rule 11 sanctions, it was error to levy the sanction against "the Guazzo firm." As the Supreme Court has made clear, Rule 11 sanctions may be imposed only on the individual attorney who signed the document. Pavelic & LeFlore v. Marvel Entertainment Group, 493 U.S. 120, 124, 110 S.Ct. 456, 459, 107 L.Ed.2d 438 (1989). As we view the record of the time period in issue, the only signed paper was Delia Guazzo's letter. Rule 11 sanctions against the other attorneys of record were, therefore, improper.
 
 
 45
 We decline the government's invitation to affirm on other grounds--i.e., § 1927 or the court's inherent power. While we may affirm on any ground that finds support in the record, see I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co., 936 F.2d 759, 761 (2d Cir.1991), the present record is too obscure to leave us comfortable in reaching out for alternative grounds to affirm. Both § 1927 and the court's inherent power demand, inter alia, a clear demonstration of bad faith in order to justify sanctions. See Oliveri, 803 F.2d at 1271-73. The district court has greater familiarity with these proceedings, and we are more confident in its ability to parse the record and determine which, if any, source of authority would support sanctions.
 
 
 46
 The Investigations Officer has also moved for sanctions. Our decision on the government's motion dictates the determination of his motion as well. We note the close nexus between the two sanctions awards. The district court originally imposed a punitive sanction of $25,000 for the actions of the attorneys in bringing the second suit. The district court later reduced that amount to $15,000 because it believed that the punitive sanction should be proportional to all the other sanctionable costs, i.e., the attorneys' fees imposed on the government's motion and those imposed on the Investigations Officer's motion. An adjustment to one of the sanctions awards (e.g., the award on the government's motion) would probably affect the underpinnings of the other, and might lead the district court, in the exercise of its discretion, to reduce or adjust the other award.
 
 
 47
 Finally, we note several other concerns over the sanctions imposed pursuant to the Investigations Officer's motion. First, the papers the district court relied upon for imposing Rule 11 sanctions appear to be those submitted with the August 27, 1990 order to show cause. Our review of the record indicates that those papers were signed only by attorney Delia Guazzo and Joint Council 73's president Frank Carracino. If so, Rule 11 sanctions against appellants other than Delia Guazzo, Joint Council 73, and Carracino would be improper. See Pavelic & LeFlore, 493 U.S. at 124, 110 S.Ct. at 459.
 
 
 48
 Second, the district court's imposition of sanctions pursuant to the Investigations Officer's motion is somewhat puzzling. In its initial sanctions order, the district court referred to what it found to be the improper conduct of counsel, and went on to state that counsel would be sanctioned. However, in imposing the specific sanction in its supplemental order, the district court held both client and counsel liable for attorneys' fees relating to Joint Council 73's second lawsuit. We are not certain that the district court intended to sanction both client and counsel pursuant to the Investigations Officer's motion; and, if it did, the basis for sanctioning the client is unclear. Again, because of the district court's greater familiarity with the record, we leave it to the district court to determine, in the first instance, which--if any--papers offend Rule 11; which--if any--appellants may be sanctioned because of those papers; and what--if any--conduct by the individual appellants warrants sanctions on any other grounds.
 
 CONCLUSION
 
 49
 We vacate the awards solely for procedural defects and remand to the district court for further proceedings.
 
 
 50
 VACATED and REMANDED.
 
 
 
 [1]
 While other entities were involved in earlier stages of this litigation, Joint Council 73 and its attorneys are the only parties to this appeal
 
 
 [2]
 Rule 11 provides in pertinent part:
 Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name.... The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.
 Fed.R.Civ.P. 11.
 
 
 [3]
 Before the Supreme Court's decision in Business Guides, Inc., the rule in this circuit was that a represented party was subject to Rule 11 sanctions only upon a showing of subjective bad faith. See Greenberg v. Hilton Int'l Co., 870 F.2d 926, 934 (2d Cir.), reh'g granted and remanded on other grounds, 875 F.2d 39 (2d Cir.1989). Business Guides, Inc. changed that rule as to parties who sign pleadings, motions, or other papers. Whether a subjective or objective standard applies to parties who do not sign such papers was left open by the Supreme Court in Business Guides, Inc., 111 S.Ct. at 935. We need not address this issue now because, as noted infra, our concern on this appeal is with the district court's failure to analyze separately the available sanctioning mechanisms, as well as its failure to identify which particular documents it believed violated Rule 11
 
 
 [4]
 A third, and even more fundamental, problem may exist here as to the propriety of Rule 11 sanctions based on Delia Guazzo's letter. For a paper to trigger Rule 11, it must be both signed and filed in court. See McMahon, 896 F.2d at 22 ("pleading, motion or other paper [must be] signed and filed in federal court"). The record is unclear as to whether this letter was filed with the district court at the time it was sent to the Investigations Officer, or whether it was merely correspondence between counsel which became part of the court's record because it was submitted by the government as support for the government's motion for contempt
 As noted infra, Delia Guazzo's letter appears to be the only basis for Rule 11 sanctions on the government's motion. As such, if Delia Guazzo never filed the letter with the district court, the sole basis for the Rule 11 sanction on the government's motion vanishes. We leave it to the district court to clarify whether this letter was ever filed by Delia Guazzo.