965 F.Supp. 366 (1997)
Frederick R. STEIMEL and Richard Steimel, Plaintiffs,
v.
INCORPORATED VILLAGE OF ROCKVILLE CENTRE, Glenn A. Hudson, as President of the Rockville Centre Civil Service Employees Association, and Rockville Centre Civil Service Employees Association, Defendants.
No. 91-CV-4691 (FB).
United States District Court, E.D. New York.
May 28, 1997.
*367 *368 Robert P. O'Brien, Mineola, NY, for Frederick R. Steimel.
Richard J. Barbuto, Mineola, NY, for Richard Steimel.
James P. Nunemaker, Jr., Ken Novikoff, Rivkin Radler & Kremer, Uniondale, NY, for the Incorporated Village of Rockville Centre.
Gerard J. Glass, Glass & Glass, Babylon, NY, for Glenn A. Hudson and Rockville Centre Civil Service Employees Association.

MEMORANDUM & ORDER
BLOCK, District Judge:
On May 31, 1991, defendant Incorporated Village of Rockville Centre (the "Village") terminated plaintiffs' long-term employment as parking meter repairmen. Plaintiffs initiated this lawsuit on November 27, 1991, approximately six months later. Their complaint charged the Village with age discrimination, under both federal and state law (the "age discrimination claim"), and for breaches of certain protective provisions of a collective bargaining agreement (the "contract claim") between the Village and plaintiffs' union, defendant Rockville Centre Civil Service Employees Association (the "Union"). It also charged the Union and its President, Glenn A. Hudson ("Hudson"), in both his official and individual capacities, for breaching their duty of fair representation (the "fair representation claim"). Plaintiffs expanded their claims against the Union and Hudson in an amended complaint on May 15, 1992, adding charges of negligence and breach of fiduciary duty. On August 31, 1995, the Court granted the Union and Hudson partial summary judgment, dismissing the negligence and breach of fiduciary duty claims, as well as all claims against Hudson in his individual capacity. See Memorandum and Order, dated August 31, 1995 (Platt, J.). The age discrimination, contract and fair representation claims were thereafter brought to trial on March 5, 1996. After a jury had been selected and all the parties had made opening statements in respect to each of these remaining claims, the Village's trial counsel, Rivkin, Radler & Kremer ("Rivkin"), in the personages of James P. Nunemaker, Jr., Esq. ("Nunemaker") and Ken Novikoff, Esq. ("Novikoff"), moved to dismiss plaintiffs' contract claim on the ground that plaintiffs had not complied with the notice of claim requirements of New York Civil Practice Law and Rules § 9802 ("CPLR § 9802"). Quite understandably, this discombobulated plaintiffs' attorneys, each of whom were sole practitioners, who were not prepared for such a surprise.
The Court reserved decision on the motion in order to afford plaintiffs an opportunity to submit responsive papers. It also decided to sever the contract and fair representation claims. The trial was, accordingly, limited to plaintiffs' age discrimination claim against the Village, which the jury rejected.
Troubled by the Village's counsels' trial tactic, Nunemaker and Novikoff were afforded a full opportunity to explain to the Court during the course of the trial whether there was any plausible reason why the motion could not have been made at an earlier time. Not being satisfied with their explanations, the Court informed them that it was considering sanctions, and invited submission of papers on the issue.
Having received plaintiffs' responsive papers to the Village's motion to dismiss, and a memorandum of law from Rivkin in response to the sanction issue, the Court now determines that the Village's motion should be denied, and that Nunemaker and Novikoff should be sanctioned pursuant to 28 U.S.C. § 1927 ("§ 1927") for their trial ploy.[1]

I. BACKGROUND

A. Notice of Claim
Plaintiffs did not plead notice of claim compliance in either their original or amended complaint; nor was the issue raised as an affirmative defense. Plaintiffs' counsels' immediate reaction to the Village's motion was *369 that they believed that a notice of claim had indeed been duly filed. Since they did not expect the ambush that Rivkin visited upon them, the notice of claim was not contained amongst their trial court papers. Later during that first trial day they produced a document, dated August 27, 1991, purporting to be a notice of claim. However, it only asserted a claim for age discrimination; making no mention about any claim for breach of contract. Furthermore, the affidavit of service stated that the notice of claim was mailed to the village mayor and the village attorney, rather than filed with the village clerk as required under CPLR § 9802, which provides:
[N]o action shall be maintained against the village upon or arising out of a contract of the village unless the same shall be commenced within eighteen months after the cause of action therefor shall have accrued, nor unless a written verified claim shall have been filed with the village clerk within one year after the cause of action shall have accrued.... The omission to present a claim or to commence an action thereon within the respective periods of time above stated applicable to such claim, shall be a bar to any claim or action therefore against said village.
Plaintiffs seek to avoid these acknowledged failings by contending that their defective notice of claim, when coupled with their subsequent complaint, was sufficient to put the Village on notice of their contract claim. They argue, alternatively, that the Village waived its right to seek dismissal by not raising the notice of claim issue prior to the commencement of the trial.

B. Sanctions
The Court initially met with Nunemaker and Novikoff, and the other parties' attorneys, in chambers on January 5, 1996, two months prior to the commencement of the trial, to review a joint pre-trial order that had been submitted two years before. The Court next met with all counsel on January 26, 1996 to review an amended pre-trial order and to set a trial date. The jury was thereafter selected on February 26, 1996, and a final pre-trial conference was held on March 4, 1996, the day before the trial began. Counsel was apprised at the pre-trial conferences of the Court's practice and policy to attend to all objections to proposed exhibits and all other legal issues that could be disposed of prior to trial in order to obviate any trial surprises or delays. The Court also advised counsel that it was particularly sensitive to the effective utilization of the jurors' time and that they should not engage in conduct that would unnecessarily require detention of the jury once the trial started. A number of legal matters were raised and resolved at the pre-trial conferences; but not a word was mentioned by Nunemaker or Novikoff about the notice of claim issue.[2]
When initially questioned by the Court upon the making of the motion why it could not have been made earlier, Novikoff responded that it was raised as expeditiously as possible:
THE COURT: This is not a motion that could have been made before?
NOVIKOFF: No, Your Honor.
(Tr. at 51).
The Court summarily then denied the motion, but nonetheless engaged in the following colloquy:
THE COURT: You had every opportunity to raise that issue before. You had summary judgment motions made. Why do you wait until after opening to make an application like that? This is not trial by ambush.
NOVIKOFF: For that reason we did not wait until the end of plaintiffs' case. We found no evidence of a notice of claim. Until we found out that the evidence would not be submitted, we cannot make the motion. It has to be pled and proven.

*370 THE COURT: You think it's waivable as a matter of law?
NOVIKOFF: Absolutely not.
THE COURT: You can raise this at any time during the course of the trial.
NOVIKOFF: I would submit, Your Honor, there are two opportunities prior to trial to raise this, one, after openings, two, on a motion for a directed verdict.
* * * * * *
THE COURT: You gave no advance notice to anybody that you wish to do that. Why could you not have done this before we selected a jury and commenced the trial? What prevented you from doing this before?
NOVIKOFF: In all due candor, this argument was not developed until about a week ago. We did not know.... We were retained as trial counsel. We had nothing to do with any of the discovery or summary judgment motions. We could not come to the Court until we asked former counsel and the Village counsel and the Village administrator to search the records. When they searched their records 
THE COURT: When did you do that for the first time?
NOVIKOFF: Approximately a week to two weeks ago.
THE COURT: How long have you been trial counsel?
NOVIKOFF: About a year.
THE COURT: A week or two before for the first time you decided to see whether the notice of claim was filed? All the discovery has gone on. You had joint pretrial orders. You have used the time from the Court and the services of the court, prepared this case for trial and now you do this. I'll have to consider what to do in that respect.
(Tr. at 51-52, 54-55.)
The Court did not change its ruling after this colloquy, and the trial proceeded for the remainder of the day. However, the Court, thereafter, concluded that the issue was not free from doubt based on its overnight research and, in particular, the New York Court of Appeals' decision in Salesian Society, Inc. v. Village of Ellenville, 41 N.Y.2d 521, 393 N.Y.S.2d 972, 362 N.E.2d 604 (1977) ("Salesian"). Accordingly, before the start of the second trial day, the Court engaged the Village's counsel in the following discussion:
THE COURT: Don't you think upon reflection that we could have avoided this scenario where the jurors have to cool their heels while we're talking about some particular provisions of law which could have been addressed without having the jury to sit and wait?
NOVIKOFF: As I informed the Court, I do understand. I apologize for any inconvenience 
THE COURT: If I agree with you, what kind of sanction should I impose upon you? Think about that. I may have to explore that possibility....
(Tr. at 173-74.) Nunemaker and Novikoff ultimately conceded that the matter could have been brought to the Court's attention prior to trial:
THE COURT: Tell me why you waited [until] after opening remarks by counsel before you brought this to the Court's attention. Was there a good cognizable basis ...?
* * * * * *
NUNEMAKER: The issue was raised perhaps a month ago. When I say  my thought process, perhaps  the issue, we began researching it, we reached what we thought was a conclusion on or about the 28th of February. We called [the Village Clerk].... [H]e prepared a certificate for us that said that it had not been received....
THE COURT: I guess the first question is, when did you have knowledge and when did you come to the opinion that you would bring a motion to my attention to dismiss on notice of claim grounds?
NUNEMAKER: Honestly, I would have to say it's February 28th, the date of [the Village Clerk's] letter to me confirming that he had checked his file and found no notice of claim.

*371 THE COURT: As of that time, certainly when we sat two days ago or so for our pretrial final conference, you certainly knew about it at that time.
NUNEMAKER: Absolutely, sir.
THE COURT: If you brought it to my attention from February 28th forward, we could have perhaps charted a different course as to how the trial would have unfolded. Would you agree?
NUNEMAKER: Very certainly, sir.
THE COURT: You had the complaint for a long period of time, and you knew there was no allegation in the complaint about the notice of claim.
NUNEMAKER: That is a true statement, but I don't think that reflects my mental process.
THE COURT: I just want to make a clear record what the facts and circumstances are, because as I indicated before, what troubles me, upon additional reflection, is that by making this motion at the eleventh hour, or maybe the thirteenth hour, you put a sole practitioner, such as Mr. O'Brien, under an awful lot of stress. He has enough to do to concentrate on the substantive aspect of his case, and now he's distracted to have to deal with this motion, where he could have had ample opportunity, if it was done in the normal course of events, prior to the start of trial to research it and reflect upon it.
* * * * * *
THE COURT: You had a sense about a month ago that this might be a course of conduct on the part of the Village that was worth pursuing, correct?
NOVIKOFF: I would say within the month the thought process was going that way. I can't say a month ago the idea was formulated. If the Court is asking me if there was ample time to bring this to the Court's attention, yes, we cannot deny that.

(Tr. at 243-247) (emphasis added).
Believing that more reasoned reflection, without the pressures of a trial already in progress, was warranted, the Court then severed the contract and fair representation claims,[3] commenting that:
I don't want the plaintiffs to stop in their tracks, now that the jury has been selected and they made their opening remarks and comments[.] [T]o now have to stop and do research on these nuances and permutations is unfair to them. I will protect them against your particular trial strategy here. What else will happen, I will make some ultimate determination. They opened to the jury already, claiming  a claim which is not going to go forward. I don't know whether that prejudices them as a matter of law. I think I could give proper instruction to the jury. It's another type of burden that you placed upon the plaintiff and the Court by your so-called trial strategy. What I'm going to do, I'm going to sever those claims. We'll proceed with the age discrimination. I will give the plaintiffs an opportunity to respond to your motion.
(Tr. at 248.)
The Court had considered reserving decision on the motion and trying the entire case, but decided not to do so because Salesian indicated that the Court might well be constrained to ultimately grant the motion. If so, a considerable amount of trial time would have been dissipated because the Court recognized, having the benefit of the opening statements, the first day of trial testimony, and proposed witness and exhibit lists, that a significant number of trial days would be consumed by the breach of contract and fair representation claims.[4]
*372 In its memorandum of law in opposition to the imposition of sanctions, Rivkin argues that it would be improper to administer sanctions since the notice of claim issue is jurisdictional and can be raised at any time prior to final judgment. Rivkin also returns to its initial contention  that the motion was made at the first appropriate occasion  stating that "the Village moved at the earliest possible moment it was completely confident that plaintiffs had failed to comply with § 9802: after plaintiffs' counsel failed in their respective opening statements to tell the jury that plaintiffs would satisfy their respective jurisdictional burdens." Village Br. at 9.

II. DISCUSSION

A. Notice of Claim
Since plaintiffs' breach of contract claim is governed by New York law, the Court must apply New York's notice of claim statutes. See Dortz v. City of New York, 904 F.Supp. 127, 141 (S.D.N.Y.1995); see also Imbrogno v. Chamberlin, 89 F.3d 87, 89 (2d Cir.1996); cf. Felder v. Casey, 487 U.S. 131, 141, 108 S.Ct. 2302, 2308, 101 L.Ed.2d 123 (1988) (state notice of claim requirements not applicable to federal claims under 42 U.S.C. § 1983). The Court determines that under the "peculiar circumstances" of this case, New York law compels the Court to deny the Village's motion to dismiss plaintiffs' contract claim for failure to comply with § 9802. See Salesian, 41 N.Y.2d at 522, 393 N.Y.S.2d 972, 362 N.E.2d 604 ("under the peculiar circumstances of this case the failure to timely serve and file a notice of claim ... was not a bar to the plaintiff's recovery") (emphasis added).
The Court recognizes that § 9802 and other notice of claim statutes are intended to foster early investigation of claims and to facilitate settlements prior to the initiation of litigation. See Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., 66 N.Y.2d 38, 42, 495 N.Y.S.2d 1, 485 N.E.2d 208 (1985) ("[T]he purpose behind statutes such as CPLR 9802 is to give the municipality early notice of a claim so that investigation can be promptly made and evidence relating to the claim can be preserved."). There are several other notice of claim statutes under New York law, each applicable to particular claims against particular municipalities. See, e.g., New York Gen. Mun. Law § 50-e (tort claims against public corporations); New York Educ. Law § 3813 (various claims against school districts); New York Town Law § 65(3) (contract claims against towns). Curiously, § 9802 is unique in that it is the only notice of claim provision contained in the CPLR, having been transferred to the CPLR by the Legislature in 1972 from the Village Law (L.1972, ch. 890), and thereby comes within the embrace of CPLR § 103(c), which instructs the Court not to dismiss a civil proceeding "solely because it is not brought in the proper form," and CPLR § 104, which calls for the CPLR to be "liberally construed to secure the just, speedy and inexpensive determination of every judicial proceeding." See Delaware American Corp. v. Village of Alden, 106 Misc.2d 186, 187, 431 N.Y.S.2d 269 (Sup.Ct. Erie Co.1980).
Defendants recognize that Salesian supports the principle that "peculiar circumstances" will relieve a party from failure to comply with § 9802 and, presumably, all other notice of claim statutes, but maintain that this is an exception that can never apply unless, unlike the present case, the issue only surfaces after final judgment has been rendered in the court of original jurisdiction. Specifically, defendants point to the Court of Appeals' language in Salesian that "under the circumstances of this case, the failure of the village to have raised the notice issue prior to final judgment ... precluded it from further relying on the fact that compliance with the notice requirement was neither pleaded nor proved." Salesian, 41 N.Y.2d at 525, 393 N.Y.S.2d 972, 362 N.E.2d 604. They also rely on two cases subsequent to Salesian in support of their contention that "`final judgment' is the yardstick against which a municipality's action is measured." Village Br. at 11; Union Br. at 6 (citing Flanagan v. Board of Educ., 47 N.Y.2d 613, 617, 419 N.Y.S.2d 917, 393 N.E.2d 991 (1979) ("the [notice of claim] defense is ... one which if not raised before the court of original jurisdiction is waived"); Lister Elec., Inc. v. Incorporated Village of Cedarhurst, 120 A.D.2d 650, 650-51, 502 N.Y.S.2d 244 (2d Dep't 1986) *373 ("Under the circumstance herein, the failure of the ... village to raise the instant issue at any time prior to a final judgment being entered ... precludes it from relying on the plaintiff's noncompliance with ... CPLR 9802.")). See also Schlosser v. Board of Educ., 47 N.Y.2d 811, 813, 418 N.Y.S.2d 388, 391 N.E.2d 1364 (1979) ("respondent's belated attempt to object to petitioners' alleged failure to comply with section 3813 of the Education Law ... was waived by the failure to assert it before the court of original jurisdiction.").
While Salesian speaks in terms of "peculiar circumstances," Flanagan and Schlosser appear to hold that waiver will attach, regardless of the circumstances, if the issue is not raised in the court of original jurisdiction. Be that as it may, these Court of Appeals cases do not state that peculiar circumstances, whether tantamount to notions of waiver or estoppel, can never attach prior to the appellate level. Indeed, just shortly before Salesian was decided, the Court of Appeals specifically held that estoppel can apply "to notice of claim situations" to bar the defense whenever it is raised. See Bender v. New York City Health and Hosps. Corp., 38 N.Y.2d 662, 668, 382 N.Y.S.2d 18, 345 N.E.2d 561 (1976). As explained in Bender, "[this] equitable bar ... may arise by virtue of positive acts, or omissions where there was a duty to act." Id.
The Court of Appeals' decisions in Bender, Salesian, Schlosser and Flanagan are reflective of the discomfort of judges to strictly construe notice of claim requirements. In reflecting on the issue, one highly regarded New York State jurist, Justice Albert M. Rosenblatt, currently sitting on the Appellate Division, Second Department, after noting that "[b]ecause the statutory notice of claim requirements are in derogation of common law, they should not be so strictly construed as to foreclose plenary adjudication," observed shortly after Bender and Salesian that "there has been a definite withering of the strict standards of notice statutes." Frink v. Town of Amenia, 91 Misc.2d 491, 494, 398 N.Y.S.2d 331 (Co. Ct. Dutchess Co.1977). Consistent with this observation, New York's courts have not hesitated subsequent to Bender, Salesian, Schlosser and Flanagan to bar the defense even when raised in the court of original jurisdiction when the circumstances can arguably support "substantial compliance," see, e.g., Frink, supra; Delaware American Corp., supra, or "waiver," see, e.g., Jeshurin v. Liberty Lines Transit, Inc., 191 A.D.2d 412, 594 N.Y.S.2d 321 (2d Dep't 1993), as well as "estoppel." See, e.g., Bethel v. New York City Transit Auth., 215 A.D.2d 206, 626 N.Y.S.2d 185 (1st Dep't 1995); Smith v. Sagistano, 186 A.D.2d 180, 587 N.Y.S.2d 764 (2d Dep't 1992); Lebanon Valley Landscaping, Inc. v. Town of Nassau, 192 A.D.2d 902, 596 N.Y.S.2d 587 (3d Dep't 1993). Moreover, even before that quartet of Court of Appeals decisions, the State's courts of original jurisdiction, with the Appellate Division's blessing, consistently rendered nugatory the notice of claim when the summons and complaint, as in the present case, contained the basic information required by the notice of claim statute and was served within the notice of claim time frame. See Kieninger v. City of New York, 53 A.D.2d 602, 384 N.Y.S.2d 11 (2d Dep't 1976); Quintero v. Long Island Railroad, 31 A.D.2d 844, 298 N.Y.S.2d 109 (2d Dep't 1969); see also Moskol v. Sood, 404 F.Supp. 916, 918-20 (W.D.N.Y.1975).
Whether combinations of the following factors in the present case are conceptualized as akin to notions of waiver, estoppel, substantial compliance, ersatz equivalents or transcendent peculiar circumstances in this somewhat muddled area of law, the Court is hard-pressed to conclude that if the Village's motion had been brought in State court under comparable circumstances it would have been granted: (1) the motion was made almost a half decade after the initiation of the litigation; (2) a notice of claim was served on Village officials, albeit for age discrimination, which put the Village on notice that plaintiffs railed against their termination; (3) the original complaint, which detailed the breach of contract claim, was served within six months after accrual of the claim, well within the one year notice of claim filing period; (4) the Village entered into a stipulation waiving any objection to service; (5) the Village chose not to alert plaintiffs to the fact that they had *374 failed to plead notice of claim compliance in their complaint by either raising such failure as an affirmative defense or by promptly moving to dismiss; (6) the Village's motion was not made until after the statute of limitations had expired; (7) the parties engaged in extensive discovery on the breach of contract issue; (8) the Village made an elaborate summary judgment motion, raising every conceivable ground for dismissal other than plaintiffs' failure to comply with the notice of claim requirements; (9) as part of the Court's pre-trial order, the Village executed a sixteen-page Stipulation of Contested Issues of Fact and Law, which made no reference to the notice of claim issue; (10) the Village also executed an amended pre-trial order, which likewise made no notice of claim reference; (11) at three pre-trial conferences with the Court, during which the Court inquired as to any unresolved legal issues, the notice of claim issue was never raised by the Village; and (12) the Village never raised the issue until after the trial had commenced.[5]

B. Sanctions
Nunemaker and Novikoff should be sanctioned under 28 U.S.C. § 1927 ("§ 1927"):
Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.
28 U.S.C. § 1927. As explained by the Second Circuit in United States v. International Bhd. of Teamsters, 948 F.2d 1338 (2d Cir. 1991):
§ 1927 looks to unreasonable and vexatious multiplications of proceedings; and it imposes an obligation on attorneys throughout the entire litigation to avoid dilatory tactics.... The purpose of this statute is "to deter unnecessary delays in litigation." ... Bad faith is the touchstone of an award under this statute.
Id. at 1345 (citations omitted). It is proper to infer the requisite bad faith "`when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay."' Id. at 1343 (quoting Oliveri v. Thompson, 803 F.2d 1265, 1273 (2d Cir.1986)); see People v. Operation Rescue Nat'l, 80 F.3d 64, 72 (2d Cir.1996) (imposing sanctions when party offered no legitimate justification for insisting on viewing a cumulative and irrelevant hour-long videotape at the end of trial).
Although the Village's motion was colorable, the timing and presentation of the motion by its attorneys was nothing short of vexatious, dilatory and disruptive. Notably, "[section] 1927 does not distinguish between winners and losers, or between plaintiffs and defendants. The statute is indifferent to the equities of a dispute and to the values advanced by the substantive law. It is concerned only with limiting the abuse of court processes." Roadway Express v. Piper, 447 U.S. 752, 762, 100 S.Ct. 2455, 2462, 65 L.Ed.2d 488 (1980) (quoted with approval in Oliveri, 803 F.2d at 1273).
The Court also has the inherent power to sanction for improper conduct, which derives from "the very nature of courts and their need to be able `to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" International Bhd. of Teamsters, 948 F.2d at 1345 (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 43, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991) (internal quotation omitted)). The standard for the invocation of this inherent judicial power parallels the issuance of sanctions under § 1927. As the Second Circuit explained in Oliveri, "the only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is ... that awards under § 1927 are made only against attorneys or other persons authorized to practice before *375 the courts while an award made under the court's inherent power may be made against an attorney, a party, or both." Oliveri, 803 F.2d at 1273. Since the Court believes that sanctions should here only be imposed against the Village's trial counsel, it will do so pursuant to § 1927 rather than under its inherent powers. See Milltex Indus. Corp. v. Jacquard Lace Co., Ltd., 55 F.3d 34, 37 n. 5 (2d Cir.1995) ("when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power") (quoting Chambers, 501 U.S. at 50, 111 S.Ct. at 2136).[6] Section 1927 is particularly apt in the present circumstances since it specifically "invites attention to a course of conduct, and imposes a continuing obligation on attorneys to avoid dilatory tactics." International Bhd. of Teamsters, 948 F.2d at 1346.
In deciding upon their course of conduct in the timing and presentation of their motion, Nunemaker and Novikoff certainly must have realized that they would be causing vexatious and gratuitous distress upon the Court and counsel and that the trial and the jury would have to be interrupted for the Court to attend to this patently dilatory and disruptive tactic. Clearly there was no legal justification for counsels' conduct. While there may be circumstances justifying a motion to dismiss on the basis of an opening statement, see, e.g., Riverwoods Chappaqua Corp. v. Marine Midland Bank, 30 F.3d 339, 343 (2d Cir.1994), this plainly was not such a case since the motion, invoking an issue of law for the Court, was not contingent or dependent upon any opening statement to the jury. To be sure, its resolution could not possibly have been adversely affected if it was brought prior to trial. To the contrary, the earlier the motion would have been brought, the less risk the movant would be confronted with claims of "peculiar circumstances."
This marks the first time that the Court is constrained to sanction an attorney. Hopefully, it will be the last. The Court is mindful, therefore, that its sanctioning power should be exercised with care and should be effected to control flagrant abuses of the judicial process. Presumably, the visiting of sanctions here will have the beneficial effect of deterring others from engaging in comparable foolish behavior.
The appropriate sanction should relate to counsels' bad faith in delaying and disrupting the litigation. The Court believes that $1,500 compensation to each of Nunemaker's and Novikoff's three colleagues will satisfy this standard under the circumstances of this case. Where, as here, the Court is personally familiar with the additional burdens visited upon counsel by reason of the disruption of the litigation, "a court may tax an attorney with the unnecessary attorneys' fees and costs expended by a litigant without a hearing." Travelers Ins. Co. v. St. Jude Hospital of Kenner, Louisiana, Inc., 157 F.R.D. 386, 387 (E.D.La.1994); see also North American Foreign Trading Corp. v. Zale Corp., 83 F.R.D. 293, 298 (S.D.N.Y. 1979) ("Many of the services of special counsel were performed before [the Magistrate], and he could properly assess the hours of professional time required."). Obviously, the imposition which Nunemaker and Novikoff visited upon their colleagues' time is not fully reflected by the small sum of $1,500 since counsel will have to prepare once again to litigate the contract and fair representation claims, but the Court's essential purpose in this case is to articulate its disapproval of *376 trial tactics which serve only to disrupt the litigation process, rather than to impose significant financial burdens upon recalcitrant counsel. However, since "the burden in this case falls as much on the court  and therefore on the taxpayers  as on the parties ... nominal reimbursement of the cost to the government," which included a wasted day of the jurors' time, "is [also] appropriate." Novelty Textile Mills, Inc. v. Stern, 136 F.R.D. 63, 78 (S.D.N.Y.1991). As part of the sanction, the additional sum of $500 will, accordingly, be paid to the Clerk of the Court.

III. CONCLUSION
The Village's motion to dismiss plaintiffs' breach of contract claim is denied. Consequently, the case will forthwith be set down for trial on the contract and fair representation claims. Sanctions are imposed upon James P. Nunemaker, Esq. and Ken Novikoff, Esq. in the combined sum of $5,000, for which they shall be jointly and severally liable. Payment shall be made within ten (10) days from the receipt of this memorandum and order, as follows: (1) $1,500 to each plaintiff's counsel; (2) $1,500 to counsel for the Union and Hudson; (3) $500 to the Clerk of the Court. Nunemaker and Novikoff shall attest to compliance by filing upon payment an appropriate affidavit with the Court.
SO ORDERED.
NOTES
[1] The attorney for the Union and Hudson also submitted a memorandum of law, joining in the dismissal motion.
[2] Notably, the Court's individual rule IV.A requires a pre-motion conference preparatory to filing any dispositive motion. While the moving party need not obtain the Court's permission before making such a motion, see MacDraw v. CIT Group Equip. Fin., Inc., 73 F.3d 1253, 1256 n. 2 (2d Cir.1996) (citing Milltex Indus. Corp. v. Jacquard Lace Co., 55 F.3d 34, 39 (2d Cir.1995)), the pre-motion conference nonetheless has proven to be an invaluable aid to the Court in the effective management and disposition of its dispositive motions.
[3] Since plaintiffs conceded that the fair representation claim was dependent upon the breach of contract claim (Tr. at 175, 224), there was no need for the Union and Hudson to remain in the case at that time.
[4] Rivkin concedes this fact in its brief on the sanctions issue. See Brief in Support of Rivkin, Radler & Kremer's Position that Sanctions are Unwarranted ("Village Br.") at 6 n. 4 ("Although over twenty people were listed by the parties to be called as witnesses, after the contract claim was severed, only 9 witnesses actually testified. Indeed, while the parties had advised the Court that the trial was anticipated to conclude in eight days, there were only three days of actual testimony and less than two hours of summation.").
[5] Many of these factors were brought to the Court's attention by plaintiffs' counsel in their responsive papers. It is questionable whether counsel would have discerned all of these circumstances if the Court did not abort the Village's ambush in order to allow appropriate consideration of and response to its motion.
[6] The Court notes that Nunemaker and Novikoff were afforded ample opportunity to explain their tactic, and to address the discrete sanctions issue. See Satcorp Int'l Group v. China National Silk Import & Export Corp., 101 F.3d 3 (2d Cir. 1996) ("due process requires ... that the delinquent party be provided with notice of the possibility that sanctions will be imposed and with an opportunity to present evidence or arguments against their imposition") (citations omitted); see also Lapidus v. Vann, 112 F.3d 91 (2d Cir.1997) ("[A] sanctioned attorney must receive specific notice of the conduct alleged to be sanctionable and the standard by which that conduct will be assessed, and an opportunity to be heard on that matter."). While the Court spoke to the Village's counsel during the course of the trial in terms of the Court's inherent power, it was perfectly clear to Nunemaker and Novikoff, as acknowledged in the Village's brief, that the applicable standard was "bad faith," which applies regardless of whether the Court acts pursuant to its inherent power or under § 1927. See Village Br. at 7-8.